## ELDRIDGE v. SEE YUP COMPANY.

A DEED of bargain and sale to A, in the usual form, had these words in the *haben-dum:* "For the use of a Chinese church, or place of religious worship and moral instruction, under his direction and in conformity to the rules of the See Yup Company." *Held,* that the legal title is in A, and that the deed does not raise any use or trust in favor of the grantor or of the See Yup Company; that the Company has no equitable title or interest in the property by force of the deed.

Authorities cited to the point, that where the *habendum* in a deed of bargain and sale is irreconcilable with the *premises,* the *premises* must prevail.

The limitation in this deed upon the use, or the direction as to the manner of using the property, is not binding upon A, because inconsistent with the *premises* of the deed.

A deed of bargain and sale may be upon trust in favor of a third party, if words expressive of that intent be used.

To raise a trust in a deed of bargain and sale, there must be—1st, a *cestui que trust;* and 2d, an interest in the property conveyed, or some right or profit growing out of it; and the deed must show these things.

The deed in this case shows no intent to make the grantee A a trustee, either for the grantor or the See Yup Company. The direction in the *habendum* as to how the property shall be used, neither qualifies the title nor raises a use or trust.

If the deed in this case were not so drawn as to represent the real facts and intention of the parties, the See Yup Company must institute a different proceeding to get the benefit of such facts.

*Query.* Whether, if the See Yup Company were in possession of the property at the time of the Sheriff's sale under execution against A, the grantee in the deed, and the deed on which they rely as creating an equity in their favor were drawn in its present form by mistake, this mistake may now be corrected so as to conform it to the original design, and thus secure the property against the plaintiff here?

Eldridge *v.* See Yup Company.

*Query.* Whether the deed could be corrected and with such effect, if the purchaser at the Sheriff's sale had express notice of the claim or title of the Company?

*Query.* Whether, if the purchaser at Sheriff's sale had notice of an equitable defense on the part of the Company when he purchased at the execution sale, his vendee is charged with this notice under the facts here?

*Query.* Whether a party deriving title to land from the vendee at a Sheriff's sale —such party having paid his purchase money—is a *bona fide* purchaser within the protection of the rule, his vendor being charged with notice of an equity?

*Query.* Whether, if the See Yup Company paid the purchase money, and the purchase was agreed originally to be made for them, and Athaie took the deed in his own name, does a resulting trust arise from these facts in favor of the Company? And if so, could such trust be set up in this case by the defendant in defense of this action? And could it be introduced under these pleadings? And would the fact of the Company's entering into possession, making improvements, etc., and being in possession at the time of the judgment, Sheriff's sale and Caney's conveyance to plaintiff, be notice to plaintiff of this equity, especially in connection with the phraseology of the deed? And what effect in this respect would express notice of these facts have upon the rights of parties?

*Query.* What is the effect, under our system, of a sale of land under execution to the execution creditor; does it pass any greater title in the premises than that actually held by the defendant in execution?

The Court below erred in ruling out testimony offered to prove the payment of the purchase money by the See Yup Company instead of by Athaie.

APPEAL from the Fourth District.

Ejectment for a lot in San Francisco, both parties claiming title under the same grantor and by the same conveyance.

The facts are that on the fourteenth of May, 1853, Gray and Barber conveyed the premises in controversy to George Athaie, by deed in the form stated in the opinion of this Court—the consideration specified being $7,000. Subsequently, Edward Caney recovered judgment against Athaie, under execution upon which the premises were sold at Sheriff's sale, bid in by Caney, who in time received the Sheriff's deed. Caney conveyed by deed to plaintiff. The complaint sets out the title of plaintiff; avers that defendants have unlawfully entered into possession of the lot and unlawfully hold possession thereof in defiance of and wholly disregarding the rights of plaintiff; that the defendants number more than two persons, who are associated in business and transact the same under a common name, which is the one by which they are sued; and asks judgment for restitution.

The answer begins thus: "Wang Tin and Ah Chong, trustees of the 'See Yup Company,' defendants herein, show to the Court the following facts by way of defense," etc. The answer then sets up that the deed from Gray and Barber to Athaie was to him as superintendent of the See Yup Company, and in trust for the Company; that Caney, at the time of his levy and sale, knew Athaie had no interest in the lot, and that plaintiff at and before the time of his purchase from Caney knew the same fact; that defendants hold the premises in trust for the Company, and for no other purpose; that the See Yup Company paid the $7,000 specified as the consideration in the deed from Gray and Barber; that the Company have expended $60,000 in improvements on the lot, of which both Caney and plaintiff were aware at the date of their respective purchases. Defendants admit the Company to be composed of about fifteen thousand "residents of the Chinese Empire, living and residing in the State of California."

The case was sent to a referee, who reported that plaintiff was owner and entitled to possession. The Court below set aside the report, and upon the pleadings and evidence before the referee rendered judgment for defendants, dismissing the suit.

The referee ruled out testimony offered by defendants to show that they, and not Athaie, paid the consideration of $7,000 to Gray and Barber.

Plaintiff appeals.

*Stow & Brown*, for Appellant.

I. It is clear that the deed, before we reach the *habendum* clause, grants and vests an absolute estate in fee simple in the grantee, Athaie; and if the *habendum* clause had been left out, that would have been the operation and effect of the deed. (4 Kent, 460.)

II. The trust or use, if any, is created by the *habendum* clause of the deed. (1 Black. Com. Appendix, 443; 2 Hilliard on R. E. 294, ch. 40; 4 Kent's Com. 468.) And the *habendum* cannot perform the office of divesting the estate already vested by the

deed, for it is void if repugnant to the estate granted.   (4 Kent, 519, 520; Black. Com. Book 2, 241; *Craig* v. *Wells*, 1 Kern. 322.)

In *Craig* v. *Wells*, 1 Kernan, 322, the New York Court of Appeals lays down this rule: "If one conveys land in fee simple, and neither excepts any part, nor reserves anything to himself out of it, but restricts the grantee to a particular use of the land, this restriction is void, as repugnant to the proprietary right of an owner in fee."

Now in the case under consideration, the reservation of the use, if any, is to a party not named in the deed.   In the same case the Court says: "It is well settled that an exception or reservation to a third person, not a party to the deed, is void.   (Shep. Touch. 80; Co. Lit. 47, A; *Moore* v. *The Earl of Plymouth*, 3 Barn. & Ald. 66; *Hornbeck* v. *Westbrook*, 8 John. 73.)   The same is true of a condition in favor of a stranger to the deed.   (Id. and 1 Wend. 388; Co. Lit. 214; Shep. Touch. 120.)"

III. This is a deed of grant, bargain and sale, and a use cannot be limited to defendants.   (*Jackson* v. *Cary*, 16 Johns. 303; *Jackson* v. *Myers*, 3 Id. 396; 5 Denio, 232.)

IV. The *habendum* clause of this deed cannot be construed into a covenant to hold the title for the use of the respondents, nor a reservation, nor a condition.   (1 Kern. 322.)

V. There can be no trust in this deed, because there are no *cestuis que trust*.

The "See Yup Company" is not a natural person nor a corporation.   The inhabitants of a town not being incorporated are incapable of taking an estate in fee, and a proviso in a deed to A, reserving to the inhabitants of the town of Rochester, which was not incorporated, the right to cut wood on the land conveyed, was held to be void, because as they could not take in fee by law, they could not take a less estate by reservation, or as *cestui que trust*. (9 Johns. 73; 8 Id. 385.)   So a grant to the church wardens of a parish was held void.   (Shep. Touch. 235.)

VI. A trust for the purposes respondents claim, idol worship, would be void.   (*Russell* v. *Jackson*, note, 7 Eng. L. & Eq.)

Eldridge *v.* See Yup Company.

*Heydenfeldt*, also for Appellant.

The conveyance to Athaie vests in him a perfect legal title, and free from any trust, if it is not qualified by the words of the *habendum* clause.

What is the effect of the *habendum?* It may limit the certainty of the estate granted, and in declarations of uses it may declare a use to a person to whom no estate is granted in the premises. (4 Cruise, 272.)

Neither of these effects are attempted or pretended here, and this is not a declaration of uses, but a deed of bargain and sale ; and so if there be anything in the *habendum* which is otherwise repugnant or contradictory to the premises, it is void. (4 Cruise, 273 ; 2 Black. 241.)

It is a consequence of the rule that deeds shall be construed most strongly against the grantor. (4 Cruise, 273.)

It is not pretended that the *habendum* here can operate as a reversion or exception, condition or covenant, in favor of the grantor, because no consequence is affixed to a breach of the use. It is also clear that the estate vested independent of its future use.

There are a few cases where the *habendum* has been held to create a trust, or modify the estate granted, but they only occur where there is obscurity in the language of the premises, or where the intention is clear and explicit. Such are the following : *Sammers case*, 6 Coke, 466 ; *Spivey* v. *Topham*, 3 East. 115 ; *Jackson* v. *Ireland*, 3 Wend. 99 ; *Deming* v. *Long Wharf*, 12 Shepl. 51. But there must be some person to take.

Here the only provision relating to defendants is, that the direction of the church shall be in conformity to their rules. This relates exclusively to ecclesiastical government, and cannot be tortured into the grant of a right of property. It might have been the intention of Athaie, the purchaser, to dedicate the land to the church, and hence the language in the deed ; but this could not be binding upon him, and he was at liberty to use it otherwise if he pleased.

A use at common law was a reservation in favor of the grantor,

Eldridge *v.* See Yup Company.

and it had two inseparable incidents—a privity in estate, and a confidence in the person—and where either of these failed, the use was suspended or destroyed. (10 Bac. Ab. 111,. Uses and Trusts.) Here there was neither " privity " nor " confidence " between the grantor and the defendants.

The same words which are necessary to create an estate in fee upon a conveyance at common law, are equally necessary upon a conveyance to uses. (*Abraham* v. *Twigg*, Cro. Eliz. 478 ; *Foster* v. *Rumney*, 11 East. 594 ; *Denne ex dem Briddon*, Id. 603.)

Here no words are used creating a *cestui que use*, and a *cestui que use in esse* is necessary to the execution of a use ; if, therefore, a use be limited to a person not in esse, or to a person uncertain, it will be void. (Bac. Uses, 42, 60 ; 1 Con. 126.) Then if one is implied in favor of defendants, they would have but a life estate for want of words of inheritance, and there would be the anomaly of a grant in fee to create a use for life without disposition of the remainder.

Thus it would operate that when the life estate was spent, there would be a reversion, or resulting trust of the remainder in favor of the grantor. This is clearly against the intention of the parties and contrary to good sense. (Dyer, 186, *a ; Crawley's case*, Cro. Eliz. 721 ; *Williams* v. *Jekyll*, 2 Ves. 682 ; *Spivey* v. *Topham*, 3 East. 115 ; *Vanhorn* v. *Harrison*, 1 Dall. 137.)

The restitution of property conveyed in fee to a particular use only is against public policy, and repugnant to the character of the estate granted. This question is fully considered in *Craig* v. *Wells*, 1 Kern. 320.

A purchaser at Sheriff's sale takes free from secret trusts. (*Smith* v. *Painter*, 5 S. & R. 223.)

The general doctrine is that trusts are of exclusive equity cognizance. (*Watkins* v. *Holman*, 16 Pet. 25 ; *Conway ex parte*, 4 Ark. 302 ; *Jackson* v. *Cary*, 16 Johns. 303.)

*Geo. B. Tingley*, for Respondents.

If the deed be in fee to Athaie, as an individual, the plaintiff must recover ; if in trust for the See Yup Company, then defendants are entitled to judgment, and the judgment below must be affirmed.

The deed is to Athaie, "his heirs and assigns forever, for the use of a Chinese church, or place for religious worship and moral instruction, under his direction and in conformity to the rules of the See Yup Company, of which the party of the second part is superintendent."

The Court will look to the whole face of the deed to ascertain the object and intent of the parties thereto. Tested by this rule, there can be no doubt as to the object and clear intent of the parties. (Hill on Trustees, 85, sec. 66.) For the use, etc., is equivalent to the term "in trust," etc. (Id. 83, sec. 65.) "But," say appellants, "this is an action at law, and your defense is an equitable one." For argument's sake admit this to be true; then I submit that we have authority under our Practice Act to set up such defense. (Prac. Act, sec. 49.) A party may set up an equitable defense to an action at law. (*Lorrain et al.* v. *Long*, 6 Cal.)

Appellant insists that there was no evidence that the See Yup Company paid Gray and Barber the purchase money for the property, but that Athaie paid therefor individually. Admit this position to be true, then respondents insist that Athaie had the right to purchase the property with his own funds, and have it conveyed to and held, or to hold it in trust for the See Yup Company, if such act had no tendency to hinder, delay, cheat or defraud his creditors.

Admitting the fee to be in Athaie, he holds the property in trust for the See Yup Company, and no judgment against the trustee can divest the *cestui que trust* of the right to possess and enjoy the property. (Hill on Trustees.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

This suit was brought to recover possession of a lot in the city of San Francisco. Paintiff claims by Sheriff's deed, upon execution sale made of the property as that of one Athaie, defendant in the process. This lot was conveyed to Athaie by deed of bargain and sale in the usual form, except that in the *habendum* of the deed these words appear: "For the use of a Chinese church, or

place of religious worship or moral instruction, under his direction and in conformity to the rules of the See Yup Company." The main question is, whether this property thus conveyed is subject to the debts of the grantee, or whether he holds it in trust, so that it cannot be so taken.

We lay out of the question all notice of the alleged illegal consideration involved in the supposed heathenish or idolatrous rites connected with the use of this building as a Chinese place of worship. This matter seems not now to be pressed. The ground assumed by the appellant is, that for technical reasons applying to the construction of a deed of bargain and sale, the *habendum* cannot control the granting clause; and that if it could, the words quoted in the *habendum* by fair construction do not raise a use or trust which could be enforced.

Much curious learning is to be found in the books as to the effect of deeds, and many subtle and unsubstantial distinctions, and technical and arbitrary rules laid down touching their construction and operation. It is said that the office of the *habendum* is to limit the certainty of the estate granted; and, in declarations of uses, it may declare a use to a person to whom no estate is granted in the *premises;* but that in a deed of bargain and sale, anything in the *habendum* repugnant to the *premises* is void. In *Jackson* v. *Ireland* (3 Wend. 99) the Court say, that no doubt the *premises* of the deed must prevail when the *habendum* clause is inconsistent with it. The *habendum* in this case was: "To have and to hold the same (land) to the said parties of the second part, their heirs and assigns, in the manner mentioned in the said last will and testament of Thomas Ireland, deceased." The *habendum*, said the Court, enlarges and explains, but is not inconsistent with the previous part of the instrument. But it seems to be agreed by all the cases, that where the *habendum* is irreconcilable with the *premises*, the *premises* must prevail. (4 Kent, 519; 2 Black. 241.) So an illustration is given by Blackstone, of a grant of the whole estate by the *premises*, and a limitation of a less estate by the *habendum*. The limitation is void. (Id.) So it is held that after words of grant in the usual form, any restriction upon the use of

the land by the grantee is void; or as the doctrine is expressed by the Court of Appeals of New York, in *Craig* v. *Wells* (1 Kern. 322). " The prohibition is inconsistent with the title conveyed by the deed, and is clearly void. If one conveys land in fee simple, and neither excepts any part nor reserves anything to himself out of it, but restricts the grantee to a particular use of the land, this restriction is void, as repugnant to the proprietary rights of an owner in fee. Such a restriction may be imposed, and may be good as a condition or covenant, but in no other form." In this case the prohibition was of the use of certain water for mill purposes. So in the same case it is said, " that an exception or reservation to a third person, not a party to the deed, is void. (Shep. Touch. 80; Co. Lit. 47 A; *Moore* v. *The Earl of Plymouth,* 3 B. & A. 66; *Hornbeck* v. *Westbrook,* 9 Johns. 73.) The same is true of a condition in favor of a stranger to the deed. (*Jackson* v. *Topping,* 1 Wend. 388; Co. Lit. 214; Shep. Touch. 120.) "

In *Hornbeck* v. *Westbrook, supra,* a proviso appeared in a deed, that the inhabitants of Rochester should be allowed to cut and carry away wood from the premises conveyed, and under this clause the defendant justified, etc. The Court, in passing on the deed, said : " The *proviso* in the deed was null and void. The inhabitants of the town of Rochester were not incorporated so as to be competent to take an estate in fee. A grant to them would have been void for uncertainty, in like manner as a grant would be void to the church wardens of a parish, or to the inhabitants of Dale, or to the commoners of such a waste. (Shep. Touch. 236 ; Co. Lit. 3 A.) It was decided, at the last term, that a grant to the people of the county of Otsego was void for the same reason. (*Jackson ex dem Cooper, etc.* v. *Cary,* 8 Johns. 385.) The grantors in the deed of 1728 were seized in fee, as private individuals, and were competent to convey in fee the common lands of the town of Rochester. This was so settled in the case of *Jackson* v. *Schoonmaker* (2 Johns. 230). And if the inhabitants are incompetent to take an estate at law by that name, a reservation to them in a deed in fee to a third person would be equally void. But such a covenant or reservation to any third person would be void. A person who is not a party to

a deed cannot take anything by it unless it be by way of remainder. The grantor cannot covenant with a stranger to the deed.    This is an acknowledged rule of law.    (*Salter* v. *Kidgley*, Carth. 76.) °In *Whillock's case* (8 Co. 69) it was admitted that a reservation in a deed to a stranger was void.    If this proviso had any legal operation, it could not have vested a right in any other persons than those who were at the time of making the deed inhabitants of Rochester.    There were no words of perpetuity, and the inhabitants were not an incorporated body, so as to be enabled to transmit a privilege to their successors.    If it was anything, it was a personal privilege, and confined to the then existing inhabitants."

What effect this doctrine would have upon the See Yup Company—an unincorporated body or association of Chinese, some fifteen thousand in number—if they had been directly mentioned or provided for in this deed, we need not consider.    For, conceding that a trust in their favor or in favor of their trustees, if declared in any part of this deed, could be enforced, we are met by the objection that no such declaration has been made.

It is plain from the authorities already cited, that the *legal title* does not vest in this company, nor in their trustees, and it is equally clear that a mere limitation upon the use, or a direction as to the manner of using this property so conveyed, is not binding, for this is fully within the principle of the case in 9 Johns. and 1 Kernan, *supra*.    The only question then is, was this a trust; for we think the better doctrine at this day is, that a deed of bargain and sale may be upon trust in favor of a third party, if words expressive of that intent be used.    Are there such words here ?    And this brings us to consider what is necessary to the creation of a trust. First, there must be a *cestui que trust;* and, secondly, an interest in the property conveyed, or some right or profit growing out of it. These things the deed must show.    We think it clear that Athaie was not intended to be made trustee for the grantors in this deed. The deed, it seems, was in form an ordinary conveyance, on full consideration for the property, and nothing is shown suggestive of an interest or concern on the part of the grantors, that the property should be devoted to the purpose indicated.    It is not inti-

mated that Athaie was to hold this property as trustee for the See Yup Company, for there are no words of grant to them or in their favor.   On the contrary, the clause of the deed merely provides that the land, the legal title of which was vested in Athaie, was to be held by him to the use of (or to be used for) a Chinese church, etc., under his direction, according to the rules of the See Yup Company.   It is as if the deed read: " This property has been sold and is conveyed, on a full consideration, to Athaie, who is to use the premises for the purposes of a Chinese church, to be under his direction as superintendent of the See Yup Company, according to the rules of the company."   But this mere direction in the deed, as to the manner in which the property, absolutely conveyed, shall be used by the grantee, neither qualifies the title nor raises a use or trust.   It might as well be said, if the deed provided in the same connection for the use of the property for a lyceum or a musical hall or a market, under the direction of the town authorities, that this would create a trust on behalf of the town.   The ownership of the property in the grantee would be entirely consistent with this use of it according to this direction or these rules; and, besides, there seems to be no covenant on the part of the grantee to follow this provision or direction in the deed.   The See Yup Company are not mentioned, as parties or beneficiaries, in the deed, nor does it appear that they had any interest or connection in or with this school or church.

What the rules referred to are we are not advised.   There is no intimation in the deed that the See Yup Company paid any money for this property, or that it was any part of the business of the association to build or superintend churches, or establish or conduct schools, etc.   The fact stated or intimated, that Athaie was to superintend or direct the church or its affairs, or that he was superintendent of this association, or that this direction was to be according to the rules of this company, certainly does not give or show title, legal or equitable, in this company, or any trust on their behalf or for them.   The language is perfectly consistent with full ownership in Athaie.   The designation of the use for which the property was conveyed may show the motive of the conveyance or

Eldridge.*v.* See Yup Company.

of the purchase, but does not create a trust in the See Yup Company which they can enforce in equity. Suppose the deed had been to A, to have and to hold for the use of a hospital under the superintendence of A, according to the rules of the Howard Association; would this language create a trust? If so, who would be the *cestuis que trust?* And, especially, would it create a trust under deed of bargain and sale, on full consideration, passing title from grantor to the grantee? Although it is held that no formal words are necessary to create a trust where the intent is apparent in the instrument, yet this intent must be unequivocal. Thus, in Hill on Trustees, 66, it is said: "For this purpose it is by no means necessary that the donee should be expressly directed to hold the property to certain 'uses,' or 'in trust,' or as 'trustee;' although such terms, having a defined and technical meaning, are more usually as well as more properly employed. It is one of the fixed rules of equitable construction, that there is no magic in particular words; and any expressions that show unequivocally the intention of the parties to create a trust will have the same effect. * * In all cases, however, the fiduciary words must be imperative on the donee; and if they confer a mere power or authority, and leave it entirely at his discretion to apply or not to apply the gift to the designated purpose, no trust will be created."

It is enough to say that we can find in the language employed in the clause of the deed already quoted no such "unequivocal intent." We must hold, therefore, upon the facts of this case, that the legal title was in Athaie; and that it does not appear that the See Yup Company had any equitable title to or interest in the property.

If the deed were not so drawn to represent the real facts, then a different course of proceeding must be taken by the company to get the benefit of this' fact. It is not necessary for us to consider here, whether if the See Yup Company were in possession of this property at the time of this Sheriff's sale, and the deed on which they rely, as creating an equity in their favor, were drawn as.it is by mistake—this mistake may now be corrected so as to conform it to the original design, and thus to secure the property against

the plaintiff here ; or if the purchaser at the Sheriff's sale had express notice of the claim or title of the company, whether this would make any difference.

Several very important questions arise in this case, which have not been argued : 1. Whether, if the purchaser at Sheriff's sale had notice of an equitable defense on the part of the company when he purchased at the execution sale, his vendee is charged with this notice, under the facts in this record ?   (It may here be observed that no proof of payment of purchase money has been shown, apart from the recital of the deed from Caney, the Sheriff's vendee, to plaintiff.   If there had been, is a party deriving title from the vendee at a Sheriff's sale a *bona fide* purchaser, within the protection of the rule—his vendor being charged with notice ?) If the See Yup Company paid the purchase money, and the purchase was agreed originally to be made for them, and Athaie took the deed in his own name, does a resulting trust arise from these facts in favor of the company ?   And, if so, could such trust be set up in this case by the defendant in defense of this action ?   And could it be introduced under these pleadings ?   And would the fact of the company's entering into possession, making improvements, etc., and being in possession at the time of the judgment, Sheriff's sale, and Caney's conveyance to plaintiff, be notice to plaintiff of this equity, especially in connection with the phraseology of the deed ?   And what effect, in this respect, would express notice of these facts have upon the rights of the parties ?   2. What is the effect, under our system, of a sale of land under execution, to the execution creditor ?   Does it pass any greater title in the premises than that actually held by the defendant in execution ?   (See the case of *Hunter* v. *Watson*, 12 Cal. 365.) We are unwilling to pass definitively upon questions of such importance without further argument; and the record does not enable us to consider them now ; for the referee ruled out testimony offered to prove the payment of the purchase money by the See Yup Company.   This testimony, we think, should have been admitted, and the question limited to the effect of it.

The Court below erred in dismissing the plaintiff's suit upon the

facts presented. We think it better to remand the case, that it may be fully tried; and for that purpose an amendment of the pleadings may be had by either party, if desired, and the Court thus enabled to find the facts as they may be presented, and give judgment upon the entire case made.

Ordered accordingly.