[Civ. No. 1080. Third Appellate District.—February 24, 1913.]

## D. E. BROWN et al., Respondents, v. O. S. RATLIFF, Appellant.

WATER-RIGHTS—EASEMENT FOR IRRIGATION DITCH—ACTION TO QUIET TITLE—COMPLAINT.—A complaint in an action to quiet title to an easement for a lateral irrigation ditch running over the lands of the defendant, and to restrain him from changing its location, is not subject to demurrer because not disclosing whether the plaintiffs rely upon a grant of a specific right of way, or upon a grant of a general right to run water across defendant's land at a place to be located by him, if it alleges that there is appurtenant to the described lands of the plaintiffs a ditch constructed to convey water thereto, and describes the route of the ditch over the defendant's land, and alleges that the ditch connects with the main canal of a named irrigation company from which the plaintiffs have the right to secure water, and alleges that plaintiffs enjoy a joint easement for such ditch by purchase over the land of the defendant.

ID.—CURING OF DEFECTS IN COMPLAINT BY ANSWER.—Any fault or uncertainty in the complaint, in the respect referred to, is cured by an answer which not only meets by denial every issue tendered by the complaint, but admits the right of the plaintiffs to an easement, and merely sets up the objection that the location of the ditch is not over a way designated by the defendant, and that such location is more burdensome upon his estate than a different location which would equally subserve the purpose of the easement.

ID.—PART OF FINDING UNSUPPORTED BY EVIDENCE—DISREGARDING AS SURPLUSAGE.—If in such action there is evidence of acts on the part of the defendant's grantor sufficient to indicate his intention to designate the route of the ditch along the line where it was finally constructed, a part of a finding, unsupported by evidence, that he caused the line to be surveyed, may be treated as surplusage.

ID.—DESIGNATION OF RIGHT OF WAY—RIGHT OF PARTIES TO MAKE.—Where an unlocated right of way is granted or reserved, the owner of the servient estate may in the first instance designate a reasonable way, and if he fails to do so, the owner of the dominant estate may designate it.

Id.—Evidence of Selection of Right of Way by Owner of Servient Estate.—The evidence is sufficient to show that the former owner of the servient estate himself designated the route over which the ditch was constructed; but if the evidence were insufficient in this respect, it is sufficient to show a location of the ditch by use and acquiescence.

Id.—Change of Location of Easement—Necessity of Consent of Parties.—Where a right of way for an irrigation ditch has been established, whether through selection by the owner of the servient estate or by use and acquiescence, it becomes the permanent way, and neither party can change the location without the consent of the other.

Id.—Purchaser of Servient Estate Takes Subject to Easement.—The purchaser of land over which a right of way for an irrigation ditch has been reserved takes title subject to the burdens of the easement.

Id.—Proper Maintenance of Ditch—Evidence and Findings.—Findings in this case that the route along which the ditch is maintained "is a good, sufficient and practical ditch, and subserves the purposes for which the same was constructed," and that it imposes no greater burden upon the land of the defendant than is necessary, and that the uses and easements of the plaintiffs therein are exercised to the least possible injury to the land of the defendant, are supported by the evidence.

Id.—Appeal—Findings Based on Conflicting Evidence.—Although the evidence on which such findings are based is conflicting, the findings are binding upon the appellate court.

Id.—Repairs and Improvements—Right to Make.—Either the owner of the dominant or of the servient estate may make repairs and improvements in the easement which do not change its character or affect its substance.

Id.—Examination of Witness—Question Callng for Conclusion.—A question to a witness who was a salesman in the employment of the corporation at the time it constructed the irrigation ditch, whether it was the intention of the officers of the company to make the ditch permanent and not subject to change calls for a conclusion and is therefore objectionable.

Id.—Former Owner as Witness—Indefinite Questions.—Indefinite questions to a witness who formerly owned the servient estate whether he ever had any trouble with the water from the ditch, the purpose of the question being to show that the ditch was located in an unsatisfactory place, are properly rejected.

Id.—Right of Owner of Servient Estate to Destroy Ditch.—The owner of the servient estate cannot justify the destruction of the irrigation ditch, because there was a mistake in locating it or be

cause it was located at a place which made the servitude more
burdensome than was necessary.

ID.—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—Error in excluding
evidence as to the location or extent of the ditch is not prejudicial,
if the fact desired to be established is shown by other evidence.

ID.—CHANGE OF LOCATION OF DITCH—CONSENT OF IRRIGATION COMPANY.
The consent of the irrigation company, which is under contract to
furnish the owners of the dominant estate with water, to change the
route of the ditch over the servient estate is without legal effect to
authorize the owner of the servient estate to make the change.

ID.—CHANGE OF LOCATION OF DITCH BY GRANTEE OF SERVIENT ESTATE.—
Where an irrigation ditch has been constructed across one tract of
land to convey water to another tract, and its location and use have
been acquiesced in by the parties for a number of years, a grantee
of the servient estate will not be permitted, some two years after
making his purchase, to change the location of the ditch and inter-
fere with the easement without the consent of the owner of the
dominant estate.

APPEAL from a judgment of the Superior Court of Kings
County and from an order denying a new trial. John G.
Covert, Judge.

The facts are stated in the opinion of the court.

H. Scott Jacobs, for Appellant.

Robert W. Miller, for Respondents.

HART, J.—This action involves a controversy over an
easement in certain of the lands of the defendant for the
maintenance of a lateral water-ditch over and through said
lands. It is conceded that the plaintiffs are entitled to a
right of way over the defendant's lands for the maintenance
of a water-ditch, but the dispute is the outgrowth of an at-
tempt upon the part of the defendant to change the route
or course of said ditch over his lands, it being the claim of
the plaintiffs that a way for the purposes of the ditch had
previously been located and established.

The principal relief prayed for by the complaint is for a
decree quieting the title of the plaintiffs to an easement for the
use of said ditch in that particular part of the defendant's

lands over and through which the route or line of the ditch now runs.

The plaintiffs were awarded judgment, from which and the order denying him a new trial the defendant prosecutes these appeals.

The judgment and the order are assailed upon the following grounds: 1. That the second amended complaint is obnoxious to the objections pointed out by the special demurrer; 2. That certain findings are without sufficient support from the evidence; 3. That the court erroneously ruled against the admission of certain evidence proposed by the defendant to the prejudice of his rights.

The undisputed facts are: All the lands belonging to the parties to this action were, up to the year 1902, parts or portions of the Laguna De Tache Grant, owned by the Laguna Lands, Limited, a corporation. On the fifteenth day of December, 1900, The Centerville and Kingsburg Irrigation Ditch Company entered into a contract in writing with the Fresno Canal and Irrigation Company whereby the former agreed to furnish from its main canal all the water required, not exceeding a certain specified amount, for irrigating certain lands, including those owned by the parties to this action. The contract made provision for the extension of the main canal to a point with reference to the lands to be so irrigated from which, by means of branch or lateral ditches, the water might be conveniently taken for the purpose of irrigating said lands. The water-right thus acquired, "with all and every necessary easement and right of way for canals, ditches, and flumes, for the conveyance of water for the irrigation of said lands and the whole thereof," thereby became and is appurtenant to said lands.

"Subsequent to the year 1902, the lands described in the complaint were, with the water-right above mentioned, and subject to the burden of servitudes for rights of way over and through the same for canals, ditches and flumes, sold in separate parcels to the plaintiffs and one Purley Murdock, the grantor of the defendant." The ditch in question—that is, the lateral ditch across the Ratliff lands—was not in existence when Murdock purchased said lands from the Laguna Lands Limited, but it appears that, after such purchase, and in the month of August, 1903, he constructed said ditch across

his land—that is, he plowed a furrow over the line and V'd it out with a "V." In the month of November, 1903, one H. L. Ward, a civil engineer in the employ of the Laguna Lands Limited, surveyed and constructed the ditch over the route or line thus established or "V'd" out by Murdock. This ditch was maintained and used until 1905, in the month of November of which year the defendant purchased from Murdock the lands over and through which said ditch is located. The defendant became dissatisfied with the location of the ditch thus constructed and maintained over his lands, and it appears consulted some of the plaintiffs with the view of securing their consent to a change in the location of the line or route thereof over his lands. He thereafter constructed a new ditch and proceeded to plow in the old ditch, when the plaintiffs instituted this action and secured a preliminary injunction restraining him from interfering with or disturbing the old ditch pending the final determination of the issue tendered by the complaint.

1. The objection to the complaint, raised by the special demurrer, is that it cannot be determined from an inspection thereof "whether the plaintiffs rely upon a grant or conveyance of a specific right of way, or whether they rely upon a grant of the general right to run water across the defendant's lands at no specific place but at a place located by them." There is no substantial merit in this objection. The complaint alleges that, "at all the times hereinafter mentioned, there was, and now is, appurtenant to the said lands above described (the lands of the plaintiffs) a certain water-ditch built, dug and constructed for the express purpose of carrying and conveying water from that certain waterway . . . to, over and on the lands above described, for irrigation of said lands and other domestic uses and purposes," following which averment is a description of the route or way of said ditch over the lands of the defendant; that said ditch connects with the main canal of the Centerville and Kingsburg Irrigation & Ditch Company, from which the plaintiffs enjoy the right of securing water for the purposes above mentioned, and to be carried onto and over their respective parcels of land by means of the lateral ditch constructed over and across the land of the defendant; that the "plaintiffs, and each of them, allege that they own, enjoy and possess a joint ease-

ment and right of way for said ditch, by purchase and grant, over, across and through the lands of said defendant, and that the ditch hereinabove described is along and upon said right of way in traversing and crossing the lands of the said defendant; . . ." It is very clear, from the foregoing averments, that the plaintiffs claim an easement in the defendant's lands for the specific right of way now used or exercised by them in the maintenance of the lateral ditch in existence at all the times mentioned in the complaint and which is specifically described therein. Whether, therefore, the particular right of way so claimed and described was acquired by the plaintiffs through a specific grant thereof or the particular location of the same, as said location is described in the complaint, was the result of the exercise of a general reservation in the grant of an easement in the defendant's lands for the purpose mentioned, is immaterial. It is enough to know, for the purposes of this action, that the right of way *was* located and that the plaintiffs claim the right to its enjoyment as so located. But there is even another answer to the objection here made to the complaint: If the complaint may be said to be faulty for uncertainty in the respect as to which it is here criticised, the reply is that the answer not only meets by denial every issue tendered by that pleading, but, furthermore, admits the right of the plaintiffs to an easement in the defendant's lands for the purposes of a right of way for a water-ditch over and across the same, and merely sets up the objection that the location of the ditch in question is not over a way designated by the defendant and that said way is more disadvantageous to or burdensome upon his estate than another and different location which would equally and as fully subserve the purposes of the easement. Thus it will be observed that, conceding that the plaintiffs' pleading is vulnerable in the respect as to which it is assailed, the defendant, by his answer, has cured the defects complained of and has thus and by his denials succeeded in putting in issue all the questions essential to a full and just determination of the paramount issue in the case. What is said in *Dennis* v. *Crocker-Huffman etc. Co.*, 6 Cal. App. 58, 61, [91 Pac. 425, 427], has peculiar relevancy to the proposition under consideration: "The rationale of the rule requiring certainty in pleading is that the opposing party may be made fully cogni-

zant of the facts upon which the plaintiff relies and which the defendant must meet by denial or in avoidance. . . . Moreover, the answer specifically denies all the material averments, and thus the issues involving all the important questions which could arise were fairly made and squarely presented. Therefore, even if it were conceded that the court erred in its ruling on the demurrer, the same was cured by the full and complete denials of the answer. Besides, it is not every erroneous ruling of the trial court in this regard that demands a reversal of the judgment. Substantial injury to defendant must have resulted from the action of the court,'' citing the following cases: *Holland* v. *McDade,* 125 Cal. 353, [58 Pac. 9]; *Jager* v. *California Bridge Co.,* 104 Cal. 542, [38 Pac. 413]; *Stephenson* v. *Donel,* 125 Cal. 656, [58 Pac. 258]; *Williams* v. *Casebeer,* 126 Cal. 77, [58 Pac. 386]; *Rooney* v. *Gray Bros.,* 145 Cal. 753, [79 Pac. 523]. It follows from the condition of the pleadings as thus explained that by findings three and four the court did not transcend the issues thus submitted.

2. Findings 6, 7, 8, 9, 10, and 11 are assailed by the defendant upon the ground that there is no evidence in the record from which they derive support. But an examination of the record will not sustain this contention. The facts which the court was justified in finding from the evidence are substantially as they are briefly given in the beginning of this opinion. But we will specially review each of the assignments under this head in the order in which they are treated in the opening brief of counsel for the defendant. The specific objection to finding 6 is that there is no evidence which supports that part thereof to the effect that Murdock, when locating the line of the ditch in question over his lands, caused the same to be *surveyed.* It is true that there is no evidence which justifies that part of said finding; but, whether the ditch or the line thereof as located by Murdock was or was not surveyed by him, is clearly immaterial, since the sole purpose of the evidence addressed to the proof of Murdock's acts in connection with the marking out of a route for a ditch over his land was to disclose that, as the owner of the servient estate, thus the right of way reserved in the grant for the ditch was selected and designated by him in the first instance. If, as will later be perceived to be true, there were other acts

on his part sufficiently indicative of an intention to designate the route over and along which the ditch was finally constructed as the particular route which he preferred should be used for the purpose of the right of way which the plaintiffs were entitled in the enjoyment of the easement reserved to them in his lands, then it is manifest that it can make no difference whether, when he first outlined the route, he surveyed it or not, and therefore, that part of finding 6 may be regarded and treated as surplusage or of no importance.

3. The seventh and eighth findings are objected to because thereby the court decides that the plaintiffs have a vested right in and ownership of the ditch in question and the right of way upon, over and along which the said ditch is built, and that the defendant purchased the land from Murdock "subject to the burdens and servitudes herein found to exist by reason of said ditch and its appurtenances of easements and right of way." The point made against these findings is that the court thus decided that the plaintiffs are entitled to a specific right of way over the defendant's land, whereas, under the terms of the reservation, the former are "only entitled to the right to convey their water across defendant's lands in such manner as will do the least possible injury to defendant," and that the defendant has the right to compel the plaintiffs to locate and construct their ditch across his land at a point or over a route selected and pointed out by him. It is, of course, "settled law that where an unlocated right of way is granted or reserved, the owner of the servient estate may in the first instance designate a reasonable way, and if he fails to do so, the owner of the dominant estate may designate it." (*Ballard* v. *Titus,* 157 Cal. 673, 683, [110 Pac. 118]; Jones on Easements, sec. 337; *Kripp* v. *Curtis,* 71 Cal., 62, 65, [11 Pac. 879]; *Blum* v. *Weston,* 102 Cal. 362, 369, [41 Am. St. Rep. 188, 36 Pac. 778].) We think the evidence fairly shows that this is precisely what the owner of the servient tenement did in this case. Murdock, the grantor of the defendant, testified that, early in the year 1903, he plowed and V'd out a furrow across his lands which is the route over and along which the ditch was later completed. It is true that he said that he merely V'd out the ditch for the purposes of experiment—that is to say, to determine whether the route thus marked out would be suitable or adapt-

able to the purposes of a water-ditch. It is also true that he testified that, some two weeks after the water company had completed the ditch, he went to the person who had superintended the work for the company and to him protested against the maintenance of the ditch over the route previously marked out by him, and that by said person he was told that the line or route of the ditch could be changed at any time thereafter. But against these statements is the admitted fact that he never ran any water through the "smaller ditch" or otherwise attempted to test it, as he claimed was his sole purpose in the first place in building it, and, furthermore, that the ditch thus outlined by him remained in that condition until it was enlarged and completed for practical purposes by the land and water companies; that he never thereafter attempted to change the ditch or place it over and along a different route; that (so he himself testified) during the three years that he had possession of the lands across which the ditch passes, he kept up the ditch himself and that the plaintiffs did absolutely nothing toward keeping it in working order; that he used the ditch for the purpose of conveying water from the main canal on to his own land, and that some of the plaintiffs, as to their lands, did likewise, and that he not only never objected to the use of the ditch by the latter but was willing that they should so use it. These acts and the conduct upon the part of Murdock manifestly constituted evidence of the most forcible and persuasive character of his intention to designate that particular route for the right of way over his lands for the ditch. Thus it sufficiently appears that the court was warranted in finding that the right of way was located by Murdock himself over the route indicated and that as so located and established the plaintiffs and all directly concerned accepted it. But, even if it might with some reason be held that the evidence does not clearly show that Murdock himself actually designated or pointed out the route over and along which the ditch in controversy was constructed and which as so laid out and constructed is now and for many years has been accepted, maintained, and used by the plaintiffs and the land company, still it is certainly true that the evidence shows a location by use and acquiescence and thus the right of way has been regularly located and fully established. And the rule is that where a way is thus located and

fully established, it then becomes the permanent way, and that neither party can change the location without the consent of the other. (Jones on Easements, sec. 343, and cases cited in the foot notes.) So, whether the way was actually selected by Murdock or located and established by use and acquiescence, in either case it became and constituted the specific right of way for the satisfaction of the easement to which the plaintiffs were entitled in the defendant's land. It, therefore, follows that the court with perfect propriety found that the plaintiffs acquired a vested right in the right of way and ditch as thus located and established, and that the defendant Ratliff purchased the land over which the right of way for the ditch was reserved and took title thereto subject to the burdens of said easement.

4. The ninth and tenth findings, which are challenged by the defendant, involve a decision by the court that the route along which the ditch is maintained "is a good, sufficient and practical ditch, and subserves the purpose for which the same was constructed," and that the ditch or the right of way as located imposes no greater burden or servitude upon the lands of the defendant than is absolutely required; that the uses and easements of the plaintiffs in said right of way and ditch are exercised by the plaintiffs to the least possible damage and injury to the lands and premises of the defendant. It is not intended nor is it regarded necessary to reproduce here an elaborate resumé of the evidence to show that these findings are based upon evidence amply sufficient to support them. In confirmation of this declaration, it is only requisite to briefly refer to the testimony of the witnesses, D. E. Brown, W. R. Hunt, and Frank Brown, who worked on and assisted in the construction of the ditch, and that of F. J. Boland, a civil engineer, who surveyed the ditch. D. E. Brown testified that "there is not a foot of that old ditch (referring to the ditch in question here) on what would be termed a fill; it is not above the surface of the ground along the ditch line. None of the ground on the Ratliff land is below the ditch, where the ditch runs. The ditch is in the ground from the headgate to where it leaves Mr. Ratliff's lands and there is not a fill in it. . . . I have never known of a break in it." Hunt and Frank Brown corroborated the foregoing testimony.

Boland declared that the ditch "was cut in the ground. No part of it is in a fill. . . . I found that the banks were sufficiently proportioned to hold the amount of water that I determined could be turned into this ditch by the checks in the main canal. . . . There is sufficient bank to this ditch to make it stout. The ditch is built on what is termed 'high land,' higher than the surrounding land and consequently it answers the purpose for which it is built, for the irrigation of the land, and is undoubtedly placed on the most advantageous contour of the earth, which is usually conceded to be the highest surface point in the territory irrigated by the canal. The soil along the course of the ditch is a sort of silt, not the best in the world for building ditch banks, but of sufficient substance to hold the water, which could be carried in a ditch of this size. I calculated that this ditch, under ordinary conditions, would carry 12.67 second feet. . . . Of course, squirrel holes and natural wear and tear, to which *each and every ditch is subject in this country,* might occur here to make this a dangerous ditch. . . . From elevations I took, I found the old Brown ditch (referring to the ditch in controversy) to be three inches to the thousand feet. *The Brown ditch is on the highest practical ground.* I understand by the grade line of the ditch the difference in elevation between any two given points. In some instances it would be the point of departure and the terminal point." Later on, in reply to a question by counsel for the defendant as to whether the fact that the old ditch was of greater length than the new and "the fact that it (the old) has more turns and twists, would make any difference in your comparison of the carrying capacity of the two ditches," Mr. Boland testified, in part: "There are one, two, three right angles in the new ditch. There are no right angles in the old ditch, as I remember it, and this map shows it curves naturally around and don't tend to decrease the flow, whereas in the new ditch the right angles in it materially decreases the flow." He further stated that the "difference in the length of the two ditches is only 149 feet, including the distance from the mouths of the two ditches up stream." (It will be understood that the "new ditch" referred to by Boland is the ditch constructed by the defendant and intended by him to be used in lieu of the "old ditch," or the one directly involved in this dispute.)

There is other testimony to the same effect as the foregoing, but enough of the evidence bearing upon the question determined by findings 9 and 10 has been given above to disclose that, as stated, said findings are well fortified against successful attack. There is, of course, a sharp conflict between the testimony given by the defendant and that produced by the plaintiffs with regard to the proposition, but it was for the trial court to determine that conflict and reach a conclusion of its own as to the truth of the matter. Such conclusion is manifestly binding upon this court.

5. That part of finding 11 in which the court found that, in the month of January, 1908, the defendant wrongfully interfered with the plaintiffs "in the exercise of their rights, uses and easements in said right of way and ditch" etc., is assailed for alleged insufficiency of the evidence to sustain or support it. The specific contention with respect to this assignment is that, the defendant having prepared, previously to the destruction of the old ditch, another ditch across his lands of like capacity in all respects as the old ditch and dedicated the same to the plaintiffs for the purpose of conveying their water over and through his land, it cannot be said that he in any manner or measure interfered with the easement of the plaintiffs.

Testimony has already been examined which discloses the circumstances under which the old ditch was located and that said location is a reasonable one, subjecting the lands of the defendant to no greater inconveniences or disadvantages than would the way along which the new ditch is located or any other route over said lands along which the ditch might be maintained. In addition to the testimony so referred to, the record discloses other evidence, which need not be adverted to in detail here, tending to show that the "new ditch," in respect of grade (a most important factor in the matter of the practicability of a water-ditch to perform the functions for which it is intended) and the width and depth, is very inferior to the old ditch. Moreover, the objection to that portion of finding 11 referred to assumes the right of the defendant to arbitrarily or without the consent of the owners of the easement to change the right of way over which the ditch passes, and, as shown, this assumption has in law no foundation for its support. And, in this connection, it may be re-

marked that, while the defendant testified that, before con-
structing the "new ditch," he obtained the consent of some of
the plaintiffs to change the line of the ditch, the latter con-
tradicted his testimony in that particular and declared that
they not only did not give their consent to such change, but
vigorously protested against it, thus creating a conflict in the
evidence upon that proposition. It is, however, contended
that the evidence shows that the proposed change in the course
of the ditch across the defendant's lands involved nothing more
than mere "repairs and improvements in the easement and
does not change its character or affect its substance," and
that the defendant, as the owner of the servient estate, has
the right to make changes and repairs which in no way affect
the rights of others or which do not change or alter or ma-
terially affect the character of the easement. This is the rule
as to the owner of the dominant estate (*Burris* v. *People's
Ditch Co.,* 104 Cal. 248, 252, [37 Pac. 922]). And is no
doubt the rule as to the owner of the servient tenement. And
we think we may safely go further and say that, where it
might be shown that, by the actual exercise of the rights of
an easement for a right of way for a water-ditch or a road-
way—that is, after the right of way had been established and
was being used—the servient estate was required to suffer,
*unnecessarily,* great or irreparable injury, a court of equity,
under such circumstances, and in a proper proceeding, would
perhaps be authorized to sustain the bearer of the servitude
or burden in an application to make such changes in the man-
ner of the exercise of the right of easement as would afford
him the full protection and conservation of his estate and
his rights therein, at the same time keeping in view and fully
protecting the just rights of the owners of such easement.
But, according to the evidence from which the findings were
obviously educed, the change proposed by the defendant would
go beyond the mere question of repairing or improving the
old ditch. It would result in changing almost the entire
course of the ditch and (according to the testimony of the
engineer) in deteriorating its ability or practicability properly
to subserve the purposes of and consequently the just rights of
the plaintiffs in the easement, while it would not materially
lessen the burdens of the servitude upon the defendant's land
as said servitude is now exercised.

6. The rulings upon the evidence to which objections are urged by the defendant are numerous but, in our opinion, without substantial merit. The witness, Cornell, at the time the ditch was constructed a salesman in the employment of the Laguna Lands Limited, was not allowed to answer the question, propounded by the defendant's attorney, whether or not the intention of the officials of said corporation, in laying out and constructing the lateral ditch in question, was that it was to be a permanent ditch across the defendant's lands, and the location not subject to change. The question thus propounded, it is very clear, as was pointed out by counsel for the plaintiffs when the objection was made, called for the conclusion of the witness as to the intention of the officers of the land company with respect to the matter to which the question related, and for this reason, if for no other, the objection was properly sustained.

7. The objections to the questions to the witness, Murdock, as to whether he ever had any trouble with the water from the ditch when he owned the defendant's lands were properly sustained. The asserted object of the questions was to show that the water from the ditch had overflowed or seeped out and passed over and damaged the land of the defendant. The argument advanced in support of the propriety of the testimony sought to be elicited through those questions was that thus it would be shown that the ditch was located "in an unsatisfactory place." The reply to this suggestion is: 1. That the issues submitted by the pleadings for decision are whether the right of way for the ditch was located in the first place by the defendant, or established by usage, and, if so, whether the defendant wrongfully interfered with it and thus the easement of the plaintiffs. If the first of the propositions as thus stated were true, then clearly it could be no defense to the defendant's conduct in destroying the ditch to say that he had discovered, after the way was located, that a mistake had been made in locating it or that it was located on that part of his land which made the servitude more burdensome thereto than was necessary for the full enjoyment by the plaintiffs of their rights. 2. The questions were so indefinite as to their meaning and scope that answers thereto could have thrown no light on the question whether another route over the defendant's lands for the right of way would have been less

of a burden thereon than is the present site of the ditch. The water could have run over or seeped through the banks of the ditch and still the line of the ditch be no more disadvantageous to or burdensome upon the servient estate than would be some other route selected for the purpose.

8. The defendant could have suffered no prejudice from the refusal by the court to allow the witness, Ward, to say, in reply to a question by the defendant's counsel, how far the "little ditch"—that is, the ditch furrowed or V'd out by Murdock—extended. Ward was the engineer who surveyed and superintended the construction of the ditch in question, and the immediate purpose of the question to which objection was made and sustained was to secure a statement from Ward as to the distance over the defendant's land the original ditch extended, the ultimate object of this testimony being to show that Murdock did not originally build the ditch entirely across his lands or with an idea of its permanency. But Ward had previously testified that "the small ditch was just about where the old ditch now stands." Murdock had testified that "after purchasing the lands I built the ditch on lots 2, 15 and 16 where the old ditch is marked on the surveyors plat." This testimony was sufficient to show how far the "little ditch" extended.

9. The letter from Teilman, the engineer of the Consolidated Canal Company, to the defendant, giving the latter the company's consent to change the location of the ditch in controversy was properly excluded as evidence. Neither Teilman nor the canal company had any interest in the easement in the defendant's lands. The company had merely contracted to furnish the Laguna Lands Limited with water for its lands, of which the defendant's lots originally constituted a part. The consent of the canal company to change the route of the ditch was, therefore, without the remotest legal force.

There are some other exceptions to the court's rulings, but they are, in a general sense, of the same character as those to which special attention has been given, and there is, therefore, no necessity for reviewing them in detail in this opinion.

The sum and substance of the whole case, as it is presented here, is that the plaintiffs were and are entitled to a right of way over the defendant's lands for a water ditch; that said

right of way was located and established, accepted and acquiesced in by all the parties, and, as so established and acquiesced in, used for a number of years for the purposes for which it was intended; that the defendant, who is the grantee of the owner of the servient lands at the time the right of way was located and established, some two years after purchasing said lands, has arbitrarily or without the permission or consent of the owners of said right of way, undertaken to change the location of the same and thus without right interfere with the easement of the plaintiffs in said lands.

The record discloses no prejudicial error, and the judgment and the order appealed from are, accordingly, affirmed.

Chipman, P. J., and Burnett, J., concurred.