[Civ. No. 1933.   Third Appellate District.—March 27, 1919.]

SUTTER BUTTE CANAL COMPANY (a Corporation), Appellant, v. RICHVALE LAND COMPANY (a Corporation), Defendant; W. H. BRADLEY et al., Respondents.

[1] ACTION ON CONTRACT—FINDING—EVIDENCE.—In this action brought to recover a stated sum for water alleged to have been furnished to one of the defendants under a written contract, there was substantial evidence in support of the finding of the court that the plaintiff did not deliver the water in accordance with its contract.

[2] VENDOR AND VENDEE—RESERVATION OF RIGHT OF WAY—CONSENT TO BY VENDEES—INTENT.—Where an instrument executed and recorded by the owner of a tract of land purporting to reserve to "its assigns and successors" a right of way for canals and ditches necessary for irrigation is incorporated by reference in a subsequent agreement of sale covering a portion of the tract, and in such agreement the vendees recognize and consent to said "reservation," in an action by such vendees to recover compensation for land appropriated for such right of way, the court is not justified

in resorting to technical refinement as to the meaning of "reservations" to defeat the manifest intent of the parties to exclude such right of way from the operation of the deed to be executed pursuant to such agreement of sale.

[3] Id.—Purchase Subject to Reservations—Estoppel.—Where such vendees agree that their deed shall be subject to such a reservation of a right of way, for canals and ditches, and, acting upon that agreement, a third person and the vendor enter into a contract under which such canals and ditches are made without any objection from said vendees, the latter will be estopped from claiming that said stipulation and reservation is void.

[4] Id.—Reservations in Favor of Stranger — Effect of.—An attempted reservation or exception in a conveyance in favor of a stranger, although not conferring title, may sometimes operate as an admission in his favor, or as an estoppel against the grantor.

APPEAL from a judgment of the Superior Court of Butte County.   H. D. Gregory, Judge.   Reversed.

Henry Ingram and W. H. Carlin for Appellant.

Samuel J. Nunn for Respondents.

BURNETT, J.—The action was brought to recover $129 for water alleged to have been furnished to the Richvale Land Company under a certain contract, which is set out in the complaint and which makes the charge a lien upon the land to be irrigated.   The real property involved consists of lot No. 35, and the east half of lot No. 36 of Richvale Colony, No. 1, in Butte County, the legal title to which was and is in said Land Company, although prior to the execution of said contract for water Bradley and Ralls had entered into an agreement with the Richvale Land Company for the purchase of the land, and they were actually in the possession and use of it during the year 1914, the period with which we are herein concerned.   At the beginning of the trial, the Richvale Land Company withdrew, and the trial was had on the complaint and answer and the cross-complaint of Bradley and Ralls and answer thereto by plaintiff.   The cross-complaint denied that plaintiff had furnished the water as agreed, and cross-complainants set up a claim for damages to their crop of rice because of the failure to deliver the water in time, also a claim for compensation for 4.18 acres of land alleged to have been taken by plaintiff in constructing ditches and roads.   The

court found that plaintiff had failed to deliver the water according to its contract, thereby damaging cross-complainants to the extent of $277.90 and had appropriated 3.13 acres of the land for which Bradley and Ralls were allowed the sum of $250.40.

It is conceded that the vital questions presented on this appeal are two, as follows: "Did plaintiff deliver the water in the year 1914 in accordance with its contract?" and "Were defendants, Bradley and Ralls, entitled to judgment for the 3.13 acres of land in question?"

[1]    As to the first of these, we think plaintiff is in error in the claim that there is no substantial evidence in support of the adverse finding of the court. It appears that plaintiff was to furnish 95 second-feet of water for the irrigation of some 5,066 acres of land altogether, including the lots in controversy, and Mr. Charles T. Tulloch, superintendent and manager of plaintiff, testified positively that the requisite amount was furnished.

It also appears without question that the amount agreed upon was amply sufficient for the purposes of all the land owners. It may be stated further that no witness for respondents attempted to specify the number of second-feet that was actually furnished, but several of them related facts from which the conclusion would follow that there was a material omission to comply with the requirement of the contract. It seems unnecessary to recite the testimony or to comment upon it further than to say that the declaration of the witnesses that there was a "shortage" in the supply could be understood to mean, under the circumstances detailed by the witnesses, only that the amount furnished was less than what was promised. The term itself, in a sense, represented the opinion of the witness, but no objection was made on that ground, and we cannot say that the lower court attributed to it a greater significance than it deserved. The other question we regard as of more serious moment.

There is no controversy as to the extent of the land that is embraced in the ditches and roads used by plaintiff for its irrigating system or as to its value, but it is claimed by appellant that this is not the proper subject of counterclaim or cross-complaint, and, furthermore, that appellant obtained a right of way for these roads and ditches by virtue of certain instruments set out in the record.

This latter contention will first receive our attention. The original instrument was executed by the Richvale Land Company on September 20, 1909, and it was recorded in the county recorder's office in Book "H" of Miscellaneous Records. Said document was termed: "Stipulation, Richvale Colony #1." Among other things it recited: "The said Richvale Land Company intends selling the said colony in tracts to various purchasers, Now, therefore, it is stipulated that in all such sales the said Richvale Land Company reserves to itself and assigns the right of way over the following property to be used as roads by the general public and the right to enter upon, open and grade said roads. The property so reserved is a part of said Richvale Colony number one and is particularly described as follows, to wit," said description including the lots in controversy. Said "stipulation" proceeds: "And, it is still further stipulated that in all such sales Richvale Land Company reserves to its assigns and successors a right of way in, to and across said colony number one and all portions thereof for the purpose of constructing and maintaining and operating (free of cost) irrigation and drainage ditches and to flow water therein, however, not unnecessarily to the detriment of purchasers of property." We may state that there is no controversy as to the road, and it will, therefore, be eliminated from further consideration. Nor is there any claim that any of the ditches, which were constructed, was or is "unnecessarily detrimental" to anyone. Then comes the subsequent agreement of sale with respondents of November 8, 1909, covering said lot No. 35 and the east one-half of lot No. 36 and containing the covenant: "It is agreed by and between the parties hereto that on the performance of all the stipulations, covenants and provisions herein on the part of the purchaser the Company will execute and deliver to the purchaser, his heirs or assigns, a good and sufficient deed conveying title to the land contracted to be conveyed upon the conditions, however, that the contract and deed made hereunder shall be subject to the terms, provisions, reservations, stipulations, etc., set out and contained or referred to in a certain instrument, dated the 20th day of September, 1909, and recorded the same day in the office of the County Recorder of said Butte County in Book 'H' of Miscellaneous Records at pages 409 and 410. The purchaser hereby assents to the said terms, provisions, reservations, stipulations, etc., in said in-

strument contained." Then follows the agreement of June 30, 1911, between appellant and the Richvale Land Company providing that appellant will furnish water for these very premises, and binding the party of the first part (appellant) to construct and complete for the second party (Richvale Land Company) ''on or before the thirtieth day of December, 1911, all lateral ditches, weirs, gates and structures necessary in its judgment for the delivery of water to said land.'' The agreement further provides that the Richvale Land Company would ''supply all necessary rights of way therefor and install service gates'' and maintain the ditches, weirs, etc., and would pay the party of the first part the sum of $13.50 per acre for the construction of said canals and ditches. In accordance with the terms of this contract, said structures were completed by appellant, there being apparently no controversy as to their proper location. The case thus stands for appellant apparently as follows: The undisputed owner of the land by a solemn instrument of record declares the purpose and intention to reserve from the operation of any future sale a right of way for canals and ditches necessary for irrigation. Thereafter an agreement of sale for a portion of said land is executed, in which the vendees recognize and consent to said ''reservation.'' This transaction is followed by an agreement between the said owner and appellant whereby the former grants to the latter a right of way for said purpose, which is accepted and its location agreed upon and the structures completed. Assuming that each step as thus detailed is legally what it purports to be, of course, no one would contend that said vendees could successfully urge a claim against appellant for compensation for the land used for said right of way. But the point is made that the attempted ''reservation'' for the right of way for said ditches, in said instrument of September 20, 1909, is entirely void, for the reason that it is in favor of a third party, and, also, because said third party is not designated and identified. The ''reservation,'' it is to be remembered, does not read ''Richvale Land Company reserves to *itself*, its assigns and successors,'' as is usual in such cases, but the provision is ''Richvale Land Company reserves to its assigns and successors,'' etc.

In *Eldridge* v. *See Yup*, 17 Cal. 52, it was held that such a covenant or reservation would be void, the court saying: ''A person who is not a party to a deed cannot take anything by

it unless it be by way of remainder. The grantor cannot covenant with a stranger to the deed." However, it is sometimes the case that what is called a "reservation" is treated as an "exception" and effect given to it, although, under the established rules of interpretation, it is inoperative as a "reservation." (*Martin* v. *Cook,* 102 Mich. 267, [60 N. W. 679]; *Burchard* v. *Walther,* 58 Neb. 539, [78 N. W. 1061]; *Bridger* v. *Pierson,* 45 N. Y. 601; *Redding* v. *Vogt,* 140 N. C. 562, [6 Ann. Cas. 312, 53 S. E. 337].) This is in line with the recognized policy of the law to give effect, as far as possible, to the intention and purpose of the parties to an instrument.

[2] But, it is apparent herein that the said provision in the instrument of September 20, 1909, strictly speaking, constitutes neither a "reservation" nor an "exception." This follows from the fact that the instrument was not a conveyance nor an agreement for the conveyance of any property, nor did it purport to be such an instrument. However, it was written evidence of the purpose of the owner to withhold from the operation of the deed to any future purchaser of said land or any portion thereof a right of way for said ditches and canals. Whether the recording of said instrument would constitute notice of such intent we need not consider, since there is no dispute herein as to *actual* knowledge of that instrument. Moreover, as we have seen, respondents expressly agreed to be bound by the terms of that instrument. Their title rests upon said executory agreement of November 8, 1909. We must scan its terms to ascertain the intent of the parties. The vendor therein agreed to convey to the vendees a good and sufficient deed, subject, however, "to the terms, provisions, reservations, stipulations," etc., of said instrument of September 20, 1909. In other words, reading the stipulation of the earlier instrument as thus incorporated in said agreement of sale, we find that the Richvale Land Company, upon the consideration of certain payments by respondents, "agrees to sell and convey unto the purchaser and the purchaser agrees to buy . . . the following real estate . . . subject to the following stipulation that in such sale Richvale Land Company reserves to its assigns and successors a. right of way in, to, and across said Colony Number One and all portions thereof," etc. No one could doubt from this language that it was the intention of the parties to except from the operation of the deed, a right of way for said purpose, and a court is not justified in

resorting to technical refinement as to the meaning of "reservations" to defeat the manifest intent of the parties to exclude this right of way.

[3] Again, it is too late for respondents to urge successfully that the language used does not measure up to the definition of a reservation. They deliberately agreed that their deed should be subject to such reservation, and, acting upon that agreement, appellant and the Richvale Land Company entered into their contract under which the improvements were made without any objection, we may assume, from respondents, and they should now be estopped from claiming that said stipulation and reservation is void. [4] That an attempted reservation or exception in a conveyance in favor of a stranger, although not conferring title, may sometimes operate as an admission in his favor, or as an estoppel against the grantor, is supported by the authorities. (*Butler* v. *Gosling*, 130 Cal. 422, [62 Pac. 596].) The same principle would apply to the vendee in a case like this, where he has agreed to the reservation.

As indicated above, there is no question before us as to the authority of the Richvale Land Company to locate the right of way. Where a dispute does arise in such cases, however, the rule to be applied is thoroughly considered in *Brown* v. *Ratliff*, 21 Cal. App. 282, [131 Pac. 769], and *Ballard* v. *Titus*, 157 Cal. 673, [110 Pac. 118]. If we are right in the foregoing, the other point suggested by appellant becomes unimportant and we need not consider it.

We think the trial judge was in error in allowing cross-complainants compensation for the land appropriated for said right of way, and for that reason the judgment is reversed.

Chipman, P. J., and Hart, J., concurred.