### WILLIAM HODGE *versus* SAMUEL BOOTHBY.

The term *beach*, when used in reference to places near the sea, means the land between the lines of high water and low water, over which the tide ebbs and flows.

In a deed from A to B " reserving to C a right to cross said lot to the beach, and to take and haul away stones, gravel, sand and seaweed, as he has hitherto done by shutting gates and bars," the phrase " *as he has hitherto done*" does not limit the manner of crossing the lot, but defines the right of taking and hauling away.

Though this reservation may not pass such right to C, yet B, by accepting the deed, is precluded from interfering with C's exercise of such right, because the title of B is only that of a stranger, as against him.

ON EXCEPTIONS to the ruling of GOODENOW, J.

TRESPASS, for breaking and entering the plaintiff's close and hauling away gravel and stones.

The general issue was pleaded, with a brief statement justifying the acts done, "under grant and reservation."

The plaintiff introduced a deed to himself from Thomas Boothby, of the *locus in quo*, containing the following clause: "Reserving to Samuel Boothby a right to cross and re-cross said lot to his field, as he has heretofore done, by shutting gates and bars; and also reserving to said Samuel Boothby a right to cross said lot to the beach, and take and haul away stones, gravel, sand and seaweed, as he has hitherto done, by shutting gates and bars; meaning and intending hereby to reserve to said Samuel the same right I reserved to myself in my deed to him, dated March 24th, 1841."

The evidence offered by plaintiff was, that there was, upon the lot described in the deed, a sea-wall thirteen feet high above high water mark at one place, and four feet at the lowest part, which was at the east end; that the defendant hauled away gravel and stones from the sea wall where it was thirteen feet high, as alleged in the writ; that, between the sea-wall and low water mark, the tide ebbed and flowed; but the tide never flowed over the sea-wall. The plaintiff admitted that, before said deed to him, the defendant had at his pleasure taken and hauled stones from the east end of the sea-wall, but never from the place where he took them at the times alleged in the writ.

The presiding Judge thereupon ruled, that the plaintiff could not maintain the action and ordered a *nonsuit;* and the plaintiff excepted.

*E. R. Wiggin,* for plaintiff.

The plaintiff at the trial made out a *prima facie* case, and had a right to go to the jury. *Foster* v. *Dixfield,* 18 Maine, 380; *Fickett* v. *Smith,* 41 Maine, 65.

By the reservation in the deed, the defendant is limited to the *beach.* He can haul stones, &c., *only from the beach.*

The sea-wall is no part of the beach. The beach is the space between high water mark and low water mark. *Cutts* v. *Hussey,* 15 Maine, 241; *Littlefield* v. *Littlefield,* 28 Maine, 184.

Hodge *v.* Boothby.

If he is not limited to the beach, he may haul stones, &c., from any part of the farm, which could not have been the intention of the parties.

Nor does the phrase in the reservation " as he has hitherto done," extend his rights. This describes the *manner* in which he may use the way, and not the *place* on which he has a right to take stones, &c.

*T. M. Hayes,* for defendant.

The opinion of the Court was drawn up by

MAY, J. — If the acts of the defendant, as shown by the evidence, were no infringement of the rights of the plaintiff, the nonsuit was rightly directed. Whether they were so or not, depends upon the construction of the deed from Thomas Boothby to the plaintiff, dated September 15th, 1857. By that deed the plaintiff became seized of the premises described in his writ, subject to the easement, whatever it may be, which was carved out of the estate by the following words contained in the deed immediately after the description of the lot, namely — " Reserving to Samuel Boothby a right to cross and re-cross said lot to his field as he has heretofore done, by shutting gates and bars; and also reserving to said Samuel Boothby a right to cross said lot to the beach, and to take and haul away stones, gravel, sand and seaweed *as he has hitherto done,* by shutting gates and bars; meaning and intending hereby to reserve to said Samuel, the same right I reserved to myself in my deed to him, dated March 24th, 1841." Whatever rights were thus reserved for Samuel Boothby were not conveyed to the plaintiff; and although the reservation may not, *ex proprio vigore,* pass such rights to the defendant, still the plaintiff by his acceptance of the deed as it is, is precluded from interfering with the defendant's exercise of such rights, because, while the defendant does not go beyond the limits of the reservation, the title of the plaintiff is only that of a stranger as against him. *Knight & ux.* v. *Mains,* 12 Maine, 41.

It appears from the testimony, that there is upon the plaintiff's lot a sea-wall, lying between the upland and the beach adjoining the sea, from the east end of which, the defendant, before the plaintiff took his deed, had been accustomed to take and haul stones at his pleasure; but not from the place where the alleged acts of trespass were committed. Do then the alleged acts, the same being fully proved, show a violation of the rights of the plaintiff?

It is contended by the plaintiff, that all the rights of the defendant, except of crossing and re-crossing his lot, are confined by a proper construction of his deed to the beach alone, by which we understand, that part of his land lying between the lines of high water and low water over which the tide ebbs and flows. This is the fixed and definite meaning of the word " beach" when used in reference to places anywhere in the vicinity of the sea, or the arms of the sea. *Doane* v. *Willcutt*, 5 Gray, 328. By this construction the sea-wall would be excluded from the places from which the defendant might rightfully "take and haul stones, gravel and seaweed" if there to be found. We do not think, however, that the reservation can properly be limited in its application, so far as it relates to the things to be taken and hauled away, to the beach alone. The beach, as well as the field of the defendant, mentioned in another part of the reservation, appears to have been referred to, as a terminus of one of the ways over which the defendant might pass, or as a particular place to which he might go. The fact that the things to be taken, other than the sand and seaweed, were to be found in the sea-wall, and had been accustomed to be taken from there by the defendant, before the plaintiff took his deed, repels the construction for which the plaintiff contends.

The true construction of the reservation to the defendant is to be found in the words, " as he has hitherto done." The idea that these words refer only to the manner of transportation, or to the teams and carriages that might be used, is too narrow to be reasonable. The right reserved was *to take*, as well as haul away. Both these rights were to continue in

Hodge *v.* Boothby.

the defendant as they had been exercised before. Not that the defendant should be confined to the precise spot or place where he had been accustomed to take and haul away, for this would not always be practicable. He was, however, bound to exercise his rights in a reasonable manner. If the sea-wall was a common mine or quarry, from which gravel and stone had been accustomed to be taken, as the testimony seems to show, the fact that it had been opened only in one place, and that the defendant had before operated only in that place, does not satisfactorily show that the words "*as he has hitherto done*," were intended to limit him, in his future operations, to the opening already made. When a new opening had been made in the same general mine or quarry, we think the defendant might rightfully operate in such new place, when he could do so without any unreasonable interference with the operations of the plaintiff. The right to take the gravel and stone would attach to the whole mine or quarry, or, in other words, to the sea-wall, when it could reasonably be exercised without any improper interference with the plaintiff's exercise of the same right. The evidence in the case fails to show any particular interference, and, we think, would not authorize a jury to find that the rights of the plaintiff had been invaded, or unreasonably violated. The nonsuit was therefore proper.

*Nonsuit to stand, and*
*Judgment for the defendant.*

TENNEY, C. J., and CUTTING, GOODENOW, and DAVIS, JJ., concurred.