[S. F. No. 11444. In Bank.—August 23, 1927.]

## ALICE M. BOYER et al., Respondents, v. EDWARD F. MURPHY, Appellant.

[1] DEEDS—CONSTRUCTION—INTENT.—In the construction of a deed the intention of the parties is to be ascertained by a consideration of the deed itself and, if necessary, circumstances surrounding the execution thereof, by the light of the rules by which any other contract is construed or interpreted, where construction or interpretation is necessary to ascertain the intention of the parties to such instrument as to the scope and effect thereof.

[2] ID.—HABENDUM—LIFE ESTATE.—According to the modern rule of construction, where a deed appears from the premises to give a fee, but the *habendum* makes it clear that a life estate is intended, the grantee will take a life estate only.

[3] ID.—CONSTRUCTION OF HABENDUM—RESERVATION OF LIFE ESTATE.—Where the *habendum* of a deed executed by a husband and wife provides, "To have and to hold the said premises, together with the appurtenances, unto the parties of the second part, and to their heirs and assigns forever, reserving to the parties of the first part the ownership and possession thereof during the lifetime of the parties of the first part and the survivor of them," it is clear that the wife, who held title to the property, intended to convey the fee with a remainder over after the determination of a life estate therein to herself and her husband and the survivor of them.

[4] ID. — RESERVATIONS AND EXCEPTIONS — CONSTRUCTION. — If the *habendum* in such case, construed as containing a reservation, is not sufficient to vest a life estate in the husband of the grantor, it is sufficient for that purpose construed as an exception to the estate granted.

1. See 9 Cal. Jur. 246; 8 R. C. L. 1038.

2. Control of *habendum* by premises, note, 111 Am. St. Rep. 774. See, also, 9 Cal. Jur. 251; 8 R. C. L. 1045. Effect of *habendum* clause as restriction on grant, note, Ann. Cas. 1913E, 1286. See, also, 8 R. C. L. 1045.

3. Construction of *habendum* clause in connection with premises, notes, 8 Ann. Cas. 444; Ann. Cas. 1915A, 1248; Ann. Cas. 1917D, 661; Ann. Cas. 1918E, 880. Effect of other language in deed to cut down estate conveyed by granting clause, notes, 12 L. R. A. (N. S.) 956; 24 L. R. A. (N. S.) 514; 42 L. R. A. (N. S.) 379. See, also, 8 R. C. L. 1094.

[5] ID.—RESERVATION OF TITLE TO STRANGER—WHEN CONSTRUED AS EXCEPTION. — While a stranger to a deed cannot take title by reservation, the reservation will be construed as an exception when so intended by the parties, and as such is sufficient to vest a life estate in one of the grantors who is a stranger to the title.

[6] APPEAL—RECORD—SPECIFICATIONS OF INSUFFICIENCY OF EVIDENCE —WHEN UNNECESSARY.—Where the decision in an action to quiet title to real property is wholly founded on a construction of a deed, a finding that the defendant's claim of interest in the property is without right amounts to no more than conclusion of law, and where in such a case there is no conflict of the evidence, specifications of the insufficiency of the evidence to support the findings of fact are unnecessary.

(1) 18 C. J., p. 261, n. 42. (2) 18 C. J., p. 333, n. 27. (4) 18 C. J., p. 305, n. 41, p. 343, n. 14. (5) 18 C. J., p. 341, n. 99, p. 342, n. 6, 7. (6) 32 Cyc., p. 1376, n. 58; 38 Cyc., p. 1980, n. 54.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. E. Woolley, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Herman J. Widman, Wm. M. Madden and Charles J. Heggerty for Appellant.

Haswell, Peterson & Martin, Fred C. Peterson and Ivan T. Crase for Respondents.

THE COURT.—A hearing in this court was granted after decision by the district court of appeal in and for the third appellate district (53 Cal. App. Dec. 813), for the reason that, while satisfied with the reasoning of said opinion, we arrived at the conclusion that the order of reversal and direction to the trial court with which the same concludes should be modified. We therefore adopt the opinion of Mr.

---

5. Validity of reservation or exception in favor of stranger to conveyance, note, Ann. Cas. 1914B, 1290. See, also, 5 Cal. Jur. 327; 8 R. C. L. 1091, 1092. Reservation or exception in deed in favor of stranger, note, 39 A. L. R. 128.

6. See 2 Cal. Jur. 712.

Justice Hart of said court, with the exception of its concluding order and direction, which reads as follows:

"This is action by the plaintiffs to obtain a decree quieting their alleged title to certain improved real property situated in the city of San Francisco, as against the alleged claim of defendant to an interest or estate therein 'adverse to said plaintiffs.'

"The complaint alleges that the claim so made by the defendant 'is without any right whatever, and that said defendant has not any estate, right, title or interest whatever in said land or premises, or any part thereof.' The prayer, besides asking for an adjudication that defendant has no interest, etc., in said real property and that he be enjoined from asserting such claim, asks that 'an account be taken of all the rents, issues and profits of said property, which have accrued to the defendant since the first day of April, 1919, and for such other relief,' etc., as may be justified in equity.

"The answer consists of specific denials of the material allegations of the complaint.

"The court found (finding No. 2) that defendant 'claimed an interest or estate therein (the real property specifically described in the complaint and the findings) adverse to plaintiffs, but that said claim was without right by said defendant, and said defendant had no right, title or interest of any kind, character or description in and to said described premises, either as set out in defendant's answer or otherwise'; that (finding No. 3) 'on the 21st day of March, 1919, the premises described in such complaint was the separate property of Teresa Doyle Murphy, and that at said time defendant, Edward F. Murphy, did not have any right, title, or interest in and to said property of any kind, character or description'; that (finding No. 4) 'on the 21st day of March, 1919, the said Teresa Doyle Murphy, and Edward F. Murphy, defendant herein, executed and delivered to the plaintiffs, James E. Murphy and Alice M. Boyer, a certain indenture in writing, which indenture in writing is in certain words and figures, as follows, to-wit,' following which is a deed executed by Teresa Doyle Murphy and Edward F. Murphy, conveying the fee in said property (therein specifically described) to the plaintiffs herein, the *habendum* clause of said deed reading as follows:

" 'To have and to hold the said premises, together with the appurtenances, unto the parties of the second part, and to their heirs and assigns forever, reserving to the parties of the first part the ownership and possession thereof during the lifetime of the parties of the first part and the survivor of them.'

"The court further found: That Teresa Doyle Murphy died in the city and county of San Francisco on April 1, 1919; 'that in and by virtue of said instrument in writing the said Edward F. Murphy did not take a life estate in and to the said premises described herein, or take any interest of any kind or character in and to the premises described therein.'

"The conclusions of law are in accord with the findings, and judgment was entered for the plaintiffs in conformity to the prayer of the complaint. Defendant made a motion for a new trial and also a motion to vacate the judgment made and entered and to give and enter a judgment in favor of the defendant. Both motions were denied.

"The defendant appeals from the judgment and also from the order denying his motion to vacate the judgment made and entered and in lieu thereof to make and enter a judgment in his favor. The appeals are supported here by a record made up in the form of a bill of exceptions.

"From the testimony it appears that the defendant Edward F. Murphy and Teresa Doyle Murphy were husband and wife, and were the parents of the plaintiffs; that, in the month of April, 1906, the records pertaining to the title to real property in controversy, as were all the public records of the city and county of San Francisco, were destroyed by fire; that thereafter, and on December 30, 1912, Teresa Doyle Murphy, separately and alone, in pursuance of the provisions of an act of the legislature popularly known as the 'McEnerney Act,' instituted an action *in rem,* 'against all the world' in the superior court in and for the city and county of San Francisco, to secure a decree restoring the records pertaining and also quieting her title to the real estate in dispute; that, after due proceedings had under said act, said superior court, on April 30, 1913, rendered its judgment in said action restoring the records affecting said property and quieting Teresa Doyle Murphy's title thereto as follows:

" '(a) That plaintiff was at the time of the commencement of this action the owner in fee simple absolute, and in the possession of the real property above described and of the whole thereof.

" '(b) That her title thereto be and the same is hereby established and quieted against all the world as of said date.

" '(c) That at said time no other person had any estate, right, title, interest, or claim in or to said property or any part thereof, either legal or equitable, present or future, vested or contingent.'

"On the 1st day of April, 1919, Teresa Doyle Murphy passed out of this life and said deed was, subsequent to the date of her death, duly recorded in the official records in the office of the county recorder of said city and county.

"The defendant testified that the deed referred to in the complaint and the findings was jointly executed by him and his wife; that he and his wife bought the property at a probate sale in 1897 or 1898, and was acquired ten years after their marriage; that when they acquired the property 'in 1898, there was a little cottage and two flats thereon. Sometimes,' defendant continued 'the flats were rented, and sometimes I would collect the rents and sometimes my wife would. When I did, I would give them to my wife. We were living in the cottage in the rear during this time. After the fire in 1906, we constructed two flats on the property, that is, the cottage on the rear was moved to the front and became a part of those two flats, and my wife and I lived in one of the flats, and rented the other. Sometimes I would make payments to the bank on the mortgages (the property having been mortgaged to secure a loan of $2,000 to be used as in part payment of the purchase price of the property), and sometimes my wife would. I have taken the rent money and paid it to the bank on these mortgages.' He further testified that 'up to the fire and earthquake in 1906, the property in question was occupied by myself and wife—a part of it—a little cottage—and from that time until the death of my wife, my wife and I were in possession of the property.' He testified that his wife 'did not receive any gifts of any property—not a dollar of money or anything else that I ever knew of. She never inherited any property from any relative.'

"Defendant proceeded to testify, without objection, that some of the money—about $1,000, which he had earned as wages prior to his intermarriage with Teresa Doyle Murphy and which he had on deposit in a bank—was contributed to the payment of the purchase price of the property and that, from time to time after his said marriage, he contributed portions of his wages to the same purpose; that the money received by him and his wife for rent of certain parts of the premises and such of his wages as he intended should be applied to the extinguishment of the mortgage debt on the property were placed in a single deposit in the bank and the two funds were, therefore, commingled. All this testimony—that is, all of the defendant's testimony to the effect that much of his earnings as a laborer or mechanic had been used as part in payment of the indebtedness against the property or the purchase price thereof—was, on motion of counsel for the plaintiffs, at the close of defendant's direct examination, stricken out upon the theory that such testimony would involve a collateral attack upon the judgment obtained by Mrs. Murphy under the McEnerney Act.

"The foregoing constitutes a statement in substance of all the testimony received respecting the defendant's connection with or relation to the property here in dispute; and, while it is set forth herein, it is to be understood that we attach importance to the testimony to the extent only of whatever assistance it may afford and has afforded in the construction of the deed in question and may lend support to the result at which we have arrived as to the effect of said deed with respect to any interest in the property therein described which Mrs. Murphy thereby sought to vest in her husband, the defendant herein.

[1] "The theory upon which the case was tried and decided below is that, inasmuch as Mrs. Murphy was the sole owner in fee of the property described in the deed, it was not legally competent for her to create, by way of a reservation or otherwise, out of the fee in said property, which she at the same time granted to the plaintiffs in remainder, a life interest therein to and for the benefit of her husband, he being a stranger to the *title*. The pole-star in the determination of this question is the intention of the parties to the deed, particularly that of the deceased wife of the defendant, to be ascertained by a consideration of the deed

itself and, if necessary, the circumstances surrounding the execution thereof, by the light of the rules by which any other contracts are construed or interpreted, where construction or interpretation is necessary to ascertain the intention of the parties to such instruments as to the scope and effect thereof. (*Barnett* v. *Barnett,* 104 Cal. 298, 300, 301 [37 Pac. 1049]; *Pacovich* v. *Southern Pacific Co.,* 150 Cal. 39, 45–47 [87 Pac. 1097]; *Parks* v. *Gates,* 186 Cal. 151, 155 [199 Pac. 40]; *Duncan* v. *Wolfer,* 60 Cal. App. 120 [212 Pac. 390]; Devlin on Deeds, 3d ed., secs. 843, 843a, 844a, and 850.) In 17 Ruling Case Law, section 6, page 619, the rule now generally followed in the construction of deeds is thus stated:

" 'It was a rule of the common law that if the *habendum* or any later clause in a deed was repugnant to the granting clause, the granting clause would override the repugnant clause or clauses, and under this rule if a grant is to one and his heirs and the *habendum* clause or a later clause is to the grantee for his life, or life of another, the *habendum* or later' clause is considered void as being repugnant to the meaning conveyed by the words "his heirs" as previously used. The modern tendency, however, is to abandon the strict common law rule of construction, the broad doctrine being asserted that in the construction of deeds as in the construction of other instruments the intention of the parties thereto as gathered from the whole instrument must govern. [2] In jurisdictions which adhere to this doctrine it is held that where a deed appears from the premises to give a fee, but the *habendum* makes it clear that a life estate is intended, the grantees will take a life estate only. And where the granting part of a deed creates a life estate only, it has been decided that the use of the word "heirs" in the warranty clause is not sufficient to show that the real intention was to convey a fee.'

"Referring to the same subject, our Supreme Court, in *Barnett* v. *Barnett, supra,* approves the rule as it is above declared in Ruling Case Law. It is there said:

" 'A grant is to be interpreted in the same manner as any other contract (section 1066), so as to give effect to the intention of the parties, if that intention can be ascertained (section 1636); and for the purpose of ascertaining that intention "the whole of the contract is to be taken to-

gether, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'' (Section 1641.) The intention, it is sometimes said, is to be gathered from the four corners of the instrument, and in case of a grant the *habendum,* as well as any other portion of the instrument, is to be considered. The ordinary use of the *habendum* is to define or limit the quality of interest, or the estate which the grantee is to have in the property granted, and, although usually made a separate portion of the instrument, is not necessarily so, but may be wholly omitted, and the interest or estate granted may be defined or limited in the premises or granting part of the conveyance. (*Montgomery* v. *Sturdivant,* 41 Cal. 290.) The rule that if the *habendum* is repugnant to the premises it is to be disregarded, is only another form of the rule that ''if several parts of a grant are absolutely irreconcilable the former part prevails.'' (Civ. Code, sec. 1070.) The intention of the parties to the grant is to be gathered from the instrument itself, and determined by a proper construction of the language used therein, but for the purpose of ascertaining this intention the entire instrument, the *habendum* as well as the premises, are to be considered, and, if it appear from such consideration that the grantor intended by the *habendum* clause to restrict or limit or enlarge the estate named in the granting clause the *habendum* will prevail over the granting clause. (*Faivre* v. *Daley,* 93 Cal. 670 [29 Pac. 256]; *Pelissier* v. *Corker,* 103 Cal. 516 [37 Pac. 465].) ''It is in such case to be considered as an *addendum* or proviso to the conveyancing clause which by a well-settled rule of construction must control the conveyancing clause or premises, even to the extent of destroying the effect of the same.'' (*Bodine* v. *Arthur,* 91 Ky. 53 [34 Am. St. Rep. 162, 14 S. W. 904].)'

[3] ''It will not be questioned that Teresa Doyle Murphy *intended* to convey the fee in the premises to the plaintiff as a remainder over after the determination of a life estate therein to herself and her husband 'and the survivor of them.' The language of the *habendum* clause of the deed so plainly and unequivocally confirms this proposition as to remove it beyond the realms of disputation. This conclusion is not only clearly warranted by the language itself of said clause of the deed, but is reinforced by the uncontradicted testimony of the defendant. Thus it was shown (and

this particular part of the defendant's testimony did not fall within the scope of the motion to strike and the order striking out certain of the testimony given by him) that the premises in controversy were acquired jointly by him and his wife some ten years after the date of their inter-marriage, and that the couple jointly held continuous actual possession thereof and together resided thereon down to the date of the death of the wife on April 1, 1919. Under these circumstances, it was only natural that the wife, having, long after they acquired the property, obtained a decree under the McEnerney Act, adjudging her the sole owner in fee of the property, should not only desire but *intend* to provide for her life companion, to be enjoyed during the remaining years of his rapidly waning life, at least such an interest in the premises as would assure him an abiding place at the 'old homestead' and, peradventure, vouchsafe to him, in his old age, protection against want of the common necessaries of life. There is, however, no serious claim here that the deceased wife of the defendant did not intend and attempt to carve out of the fee in the property a life interest therein for the benefit of herself and husband 'and the survivor of them.' The point urged here by the plain-tiffs is, as stated, that Mrs. Murphy utterly failed legally in whatever attempt she might have made to provide for a life estate in her husband, to be enjoyed by him after her death, if she predeceased him. In other words, we may pardonably repeat, the contention of the plaintiffs is that the defendant being a stranger to the *title* to the property, his wife, the sole owner of the fee therein, could not legally create in him a life interest or estate in the premises, and that, therefore, the instant she died the life estate reserved in the property to herself terminated and simultaneously therewith the right of the plaintiffs to the enjoyment of the estate passing to them, under the terms of the grant, inured to them. Obviously, in so far as the *habendum* clause of the deed applied to the wife of the deceased, there was a reser-vation of a life estate out of the fee. Undoubtedly, as before stated, Mrs. Murphy intended and undertook to create a life estate in her husband (the defendant).

[4] "But, whether the life interest which Mrs. Murphy sought to withhold from the fee for the benefit of her hus-band constitutes a reservation, in the technical sense of that

term, is a matter of no particular consequence in determining the rights of the defendant herein, although it may be well enough to say that the authorities generally, to which our attention has been called, in considering whether the attempted creation, for the benefit of a third party, of a life estate out of the fee in real property which has been granted by the owner of the fee to another, declare that to create a life estate by way of a reservation, the party for whom such estate purports to be created must be a party or not a stranger to the *deed or grant* (they do not say to the *title*) conveying the fee in remainder. (See Devlin on Deeds, 3d ed., sec. 222, p. 318; 18 Cor. Jur., sec. 339, p. 342, and cases named in the foot-notes; 8 R. C. L., sec. 148, pp. 1091, 1092, and cases cited in foot-notes; *Butler* v. *Gosling,* 130 Cal. 422, 426 [62 Pac. 596].) We have found one case in which the rule as so expressed has been interpreted to mean: 'When the books and the cases say that a reservation in a grant, in order to be valid, must be for the benefit of the grantor, or some one of the grantors, and that a reservation cannot be made for the benefit of a stranger to the deed, it is meant and the language used connotes that the reservation must be for the benefit of that grantor who, having an interest in the thing granted, may logically reserve from the operation of the grant a part of the estate or thing granted, or some right growing out of or appurtenant thereto.' (*Lemon* v. *Lemon,* 273 Mo. 484, 496 [201 S. W. 103].) But, as before in effect declared, we are not required to express an opinion upon the question whether that part of the *habendum* clause of the grant purporting to reserve a life estate out of the fee in the real property in dispute to the defendant is, strictly speaking, a reservation, for, as pointed out above, the language of the grant, particularly the *reddendum* words embraced within the *habendum* clause, must be so construed as to give effect to the intention of Mrs. Murphy with respect to the interest in the fee which evidently she desired to withhold therefrom for the benefit of her husband, regardless of the technical form in which it may be found to be necessary to sustain and carry out such intention, provided, of course, that such intention may be worked out, as in our opinion it may be, without doing violence to any of the canons of construction established and commonly invoked as a guide to the ascertainment of the

meaning and intent at the bottom of contracts in general. If, therefore, the clearly manifested intention of Mrs. Murphy to provide a life interest for her husband in the propperty in question cannot be sustained upon the theory that such intention has been evinced in the form of a reservation, as that term in law is technically understood, then, it is clear that the provision for the defendant, in order to enforce the manifest intention of Mrs. Murphy, may, in practical effect, be invested with the force of a reservation by construing it as an exception to the estate granted to plaintiffs, whereby Mrs. Murphy, for the benefit of her husband, excepted, for a specified time, from the operation of the grant to plaintiffs of the fee, an interest which must cease to exist in the manner expressed by or necessarily implied from the language of the *habendum* clause of the grant before the right of the plaintiffs to the enjoyment or beneficial use of the estate passing to them arises or inures to them.   Or, stating the proposition in other language: the plaintiffs being granted the whole of the estate in fee, subject to a certain interest therein which was expressly withheld or excepted therefrom by their grantor, are not, in the very nature of the situation, entitled to the enjoyment of the beneficial use of the fee until the excepted interest shall have ceased to exist, or has terminated, according to the terms of the instrument creating it.   This construction legally facilitates the carrying out of the plan or manifest intention of Mrs. Murphy and is in consonance with the theory according to which the courts and other authorities hold that deeds of like character to the one here should be construed, where it is necessary to do so, to effectuate the clear intention of the grantor with respect to several different estates sought to be carved out of a single fee in real property. [5] A few excerpts from the statement of the rule as it is formulated by the text writers which we conclude controls in the construction of the deed in question, and which rule as so stated is predicated upon or approved by the cases generally, will be sufficient for our purposes here.

"Mr. Devlin, in his very excellent work on Deeds, second volume, third edition, section 982, says:

" 'A stranger to a deed cannot take title by reservation. But it may operate, when so intended by the parties as an exception from the thing granted.'

"In 8 Ruling Case Law, section 148, page 1092, the rule is thus stated:

" 'Generally it is declared that a reservation must be in favor of a grantor or party executing the conveyance, and not to a stranger.

" 'A better statement of the rule is that, a reservation in a deed to a stranger being by right of authority invalid as a reservation, the tendency of the courts is to effectuate the intention of the grantor by treating it as an exception.

" 'A reservation is none the less made to a grantor if it is so made that others can derive advantage from it; it will be considered as made to him when valuable rights are secured to him, though others may be benefited by it.'

"In 18 Corpus Juris, section 339, pages 340 et seq., it is stated:

" 'A reservation is a clause in a deed whereby the grantor reserves some new thing to himself out of that which he granted before. It differs from an exception which is ever of part of the thing granted and of a thing *in esse* at the time. The office of an exception is to take something out of the thing granted that would otherwise pass. While this distinction between a reservation and an exception has been uniformly recognized, the terms "reservation" and "exception" are often used interchangeably; and the technical meaning will give way to the manifest intent, even though the technical term to the contrary is used.'

"Again, in the same volume of the same work, section 340, page 343:

" 'The true rule is said to be that, where words taken according to their technical meaning do not create a legal reservation and are notwithstanding construed to amount to a reservation, it is always done with a view to advance the intent of the parties, but not to defeat or destroy it. And words not technically amounting to a reservation are not to be so construed unless to effectuate a manifest intention. Where not repugnant to the grant, a reservation or exception may appear in any part of the deed.' (See, also, the many cases cited in the foot-notes, which support the text.)

"In *Martin* v. *Cook,* 102 Mich. 267 [60 N. W. 679], the grantor reserved to himself and to his daughter, who was a stranger to the deed and to the title, an estate for the lives

of both in the property conveyed.  The court, on page 680, said:

" 'While the rule that a reservation in favor of a stranger to the instrument is invalid as a reservation has been adhered to, yet, in order to effectuate the intention of the grantor, such a reservation has uniformly been treated as excepting from the grant the thing reserved.'  (See, also, *Burchard* v. *Walther,* 58 Neb. 539 [78 N. W. 1061]; *In re Dixon,* 156 N. C. 26 [72 S. E. 71].)

"Nothing further need be said upon the question under consideration than what is declared in the above authorities. The case here unquestionably falls within the rule as to exceptions as declared therein.

[6]  "In conclusion, it is proper to say that, in taking up this record for consideration, we did not overlook the point made by respondents at the outset of the argument presented in their brief, that the 'attempt on the part of the appellant to attack the sufficiency of the evidence to support the findings of fact' cannot be reviewed for the reason that the bill of exceptions does not contain a specification of the particulars in which it is claimed that the findings are not thus supported.  (Code Civ. Proc., sec. 648.) While the rule as declared in that section of the code in cases where the appeal is supported by a bill of exceptions, and where the findings are challenged for want of sufficient evidence to support them, should generally be followed, yet in the instant case the decision below, as is the decision here, was predicated entirely upon the construction of the deed constituting the foundation of this action.  There was little evidence received in the case and in that there was no conflict whatever, viz.: The testimony of the plaintiff, Mrs. Boyer, giving the date of her mother's death, the defendant's testimony, of which a synoptical statement is hereinabove given, and the deed.  The findings which might be sufficient as such under other circumstances, are in the present situation in reality conclusions of law following the construction of the deed.

"The conclusion arrived at upon the merits, as stated, and as is obvious, is wholly founded on a construction of the grant.  The finding, therefore, that the defendants' claim of interest in the property is without right, etc., amounts to no more than an unsupported conclusion of law.  (See *Carr*

v. *Carr,* 15 Cal. App. 480, 495, 496 [115 Pac. 261]; *Rosen-berg* v. *Bump,* 43 Cal. App. 376, 398 [185 Pac. 218].)"

The judgment and order of the trial court are reversed, with direction to said court to make and cause to be entered its judgment herein decreeing the plaintiffs herein to be the owners in fee of the parcel of land described in the complaint herein, subject, however, to the right of the defendant to have and enjoy freely the use and possession thereof during the term of his natural life.