[S.F. No. 22872. In Bank. July 11, 1972.]

DONALD E. WILLARD et al., Plaintiffs and Respondents, v.
FIRST CHURCH OF CHRIST, SCIENTIST, PACIFICA, CALIFORNIA,
Defendant and Appellant.

## COUNSEL

Petty, Andrews, Olsen, Tufts, Jackson & Sander, George A. Andrews, Jr., Richard S. Jensen and Grover Henry Nix III for Defendant and Appellant.

Landels, Ripley & Diamond and Edgar B. Washburn for Plaintiffs and Respondents.

## OPINION

**PETERS, J.**—In this case we are called upon to decide whether a grantor may, in deeding real property to one person, effectively reserve an interest

in the property to another. We hold that in this case such a reservation vests the interest in the third party.

Plaintiffs Donald E. and Jennie C. Willard filed an action to quiet title to a lot in Pacifica against the First Church of Christ, Scientist (the church). After a trial, judgment was entered quieting the Willards' title. The church has appealed.

Genevieve McGuigan owned two abutting lots in Pacifica known as lots 19 and 20. There was a building on lot 19, and lot 20 was vacant. McGuigan was a member of the church, which was located across the street from her lots, and she permitted it to use lot 20 for parking during services. She sold lot 19 to one Petersen, who used the building as an office. He wanted to resell the lot, so he listed it with Willard, who is a realtor. Willard expressed an interest in purchasing both lots 19 and 20, and he and Petersen signed a deposit receipt for the sale of the two lots. Soon thereafter they entered into an escrow, into which Petersen delivered a deed for both lots in fee simple.

At the time he agreed to sell lot 20 to Willard, Petersen did not own it, so he approached McGuigan with an offer to purchase it. She was willing to sell the lot provided the church could continue to use it for parking. She therefore referred the matter to the church's attorney, who drew up a provision for the deed that stated the conveyance was "subject to an easement for automobile parking during church hours for the benefit of the church on the property at the southwest corner of the intersection of Hilton Way and Francisco Boulevard . . . such easement to run with the land only so long as the property for whose benefit the easement is given is used for church purposes." Once this clause was inserted in the deed, McGuigan sold the property to Petersen, and he recorded the deed.

Willard paid the agreed purchase price into the escrow and received Petersen's deed 10 days later. He then recorded this deed, which did not mention an easement for parking by the church. While Petersen did mention to Willard that the church would want to use lot 20 for parking, it does not appear that he told him of the easement clause contained in the deed he received from McGuigan.

Willard became aware of the easement clause several months after purchasing the property. He then commenced this action to quiet title against the chuch. At the trial, which was without a jury, McGuigan testified that she had bought lot 20 to provide parking for the church, and would not have sold it unless she was assured the church could thereafter continue to use it for parking. The court found that McGuigan and Petersen intended to convey an easement to the church, but that the clause

they employed was ineffective for that purpose because it was invalidated by the common law rule that one cannot "reserve" an interest in property to a stranger to the title.

The rule derives from the common law notions of reservations from a grant and was based on feudal considerations. ■ A reservation allows a grantor's whole interest in the property to pass to the grantee, but revests a newly created interest in the grantor.[1] (4 Tiffany, The Law of Real Property (3d ed. 1939) § 972.) While a reservation could theoretically vest an interest in a third party, the early common law courts vigorously rejected this possibility, apparently because they mistrusted and wished to limit conveyance by deed as a substitute for livery by seisin. (See Harris, *Reservations in Favor of Strangers to the Title* (1953) 6 Okla.L.Rev. 127, 132-133.) Insofar as this mistrust was the foundation of the rule, it is clearly an inapposite feudal shackle today. Consequently, several commentators have attacked the rule as groundless and have called for its abolition. (See, e.g., Harris, *supra,* 6 Okla.L.Rev. at p. 154; Meyers & Williams, *Oil and Gas Conveyancing; Grants and Reservations by Owners of Fractional Mineral Interests* (1957) 43 Va.L.Rev. 639, 650-651; Comment, *Real Property: Easements: Creation by Reservation or Exception* (1948) 36 Cal.L.Rev. 470, 476; Annot., Reservation or exception in deed in favor of stranger, 88 A.L.R.2d 1199, 1202; cf. 4 Tiffany, *supra,* § 974, at p. 54; 2 American Law of Property (Casner ed. 1952) § 8.29, at p. 254.)

■ California early adhered to this common law rule. (*Eldridge* v. *See Yup Company* (1860) 17 Cal. 44.)[2] In considering our continued adherence to it, we must realize that our courts no longer feel constricted by feudal forms of conveyancing. ■ Rather, our primary objective in construing a conveyance is to try to give effect to the intent of the grantor. (*Boyer* v. *Murphy* (1927) 202 Cal. 23, 28-29 [259 P. 38]; *Burnett* v. *Piercy* (1906) 149 Cal. 178, 189 [86 P. 603]; *Barnett* v. *Barnett* (1894) 104 Cal. 298, 301 [37 P. 1049].) In general, therefore, grants are to be interpreted in the same way as other contracts and not according to rigid feudal standards. (Civ. Code, § 1066; *Dandini* v. *Johnson* (1961) 193 Cal.App.2d 815, 819 [14 Cal.Rptr. 534]; *Kraemer* v. *Kraemer* (1959) 167 Cal.App.2d 291, 300-301 [334 P.2d 675]; *Biescar* v. *Czechoslovak-*

---

[1]The effect of a reservation should be distinguished from an exception, which prevents some part of the grantor's interest from passing to the grantee. The exception cannot vest an interest in the third party, and the excepted interest remains in the grantor. (6 Powell, The Law of Real Property (Rohan ed. 1971) § 892.)

[2]The rule was only an alternative basis for decision in *Eldridge.* Primary reliance for invalidating the interest claimed by the third party was placed on the rule that a restriction of property to a certain use was void.

*Patronat* (1956) 145 Cal.App.2d 133, 142-143 [302 P.2d 104].) ▮ The common law rule conflicts with the modern approach to construing deeds because it can frustrate the grantor's intent. Moreover, it produces an inequitable result because the original grantee has presumably paid a reduced price for title to the encumbered property. In this case, for example, McGuigan testified that she had discounted the price she charged Petersen by about one-third because of the easement. Finally, in some situations the rule conflicts with section 1085 of the Civil Code.[3]

In view of the obvious defects of the rule, this court has found methods to avoid it where applying it would frustrate the clear intention of the grantor. In *Butler* v. *Gosling* (1900) 130 Cal. 422 [62 P. 596], the court prevented the reserved title to a portion of the property from vesting in the grantee by treating the reservation as an exception to the grant. In *Boyer* v. *Murphy, supra,* 202 Cal. 23, the court, noting that its primary objective was to give effect to the grantor's intention (*id.,* at pp. 28-29), held that the rule was inapplicable where the third party was the grantor's spouse. (See *Fleming* v. *State Bar* (1952) 38 Cal.2d 341, 345, fn. 2 [239 P.2d 866].) Similarly, the lower courts in California[4] and the courts of other states[5] have found

---

[3]Section 1085 provides that "[a] present interest, and the benefit of a condition or covenant respecting property, may be taken by any natural person under a grant, although not named a party thereto." We have been unable to find a California case that cites the section. Similar provisions in the codes of other states have also lain unused on the books. (See Mont.Rev. Codes Ann. (1962) § 67-1524; N.D.Cent.Code (1962) § 47-09-17; R.I.Gen.Laws Ann. (1956) § 34-11-10.) The language of the section clearly does not apply in this case because the church is a corporation and not a natural person.

[4]In *Sutter Butte C. Co.* v. *Richvale L. Co.* (1919) 40 Cal.App. 451 [181 P. 98], a developer provided, in its subdivision proposal, that certain easements for streets were reserved to its assigns and successors. Faced with a challenge to the easement based on the rule against reservation to a stranger, the court noted that it was "not justified in resorting to technical refinement as to the meaning of 'reservations' to defeat the manifest intent of the parties . . . ." (*Id.,* at pp. 456-457.) It held that the complaining landowner was estopped to object to the easement because of his express consent to it. Similarly, in *Smith* v. *Kraintz* (1962) 201 Cal.App.2d 696 [20 Cal. Rptr. 471], the court upheld a reservation to the general public because the intent to dedicate can be shown by even an ineffective instrument.

[5](See generally Harris, *Reservations in Favor of Strangers to the Title, supra,* 6 Okla.L.Rev. 127, 139-150.) Some courts, like the court in *Butler* v. *Gosling, supra,* mitigate the harshness of the rule by treating the reservation as an exception that retained the interest in the grantor. (See *Lemon* v. *Lemon* (1918) 273 Mo. 484 [201 S.W. 103].) While this approach did prevent the reserved interest from passing to the grantee, it did not achieve the grantor's intention of vesting that interest in the third party. Other courts gave effect to the grantor's intention by estopping those who claimed under a chain of title including the deed containing the reservation from challenging it on the basis of the common law rule. (See *Beinlein* v. *Johns* (1898) 102 Ky. 570 [19 Ky.L.R. 1969, 44 S.W. 128]; *Hodge* v. *Boothby* (1861) 48 Me. 68; *Dalton* v. *Eller* (1926) 153 Tenn. 418 [284 S.W. 68].) This approach

▮

ways of circumventing the rule.[6]

The highest courts of two states have already eliminated the rule altogether, rather than repealing it piecemeal by evasion. In *Townsend* v. *Cable* (Ky. 1964) 378 S.W.2d 806, the Court of Appeals of Kentucky abandoned the rule. It said: "We have no hesitancy in abandoning this archaic and technical rule. It is entirely inconsistent with the basic principle followed in the construction of deeds, which is to determine the intention of grantor as gathered from the four corners of the instrument." (*Id.*, at p. 808.) (See also *Blair* v. *City of Pikeville* (Ky. 1964) 384 S.W.2d 65, 66; *Combs* v. *Hounshell* (Ky. 1961) 347 S.W.2d 550, 554.) Relying on *Townsend,* the Supreme Court of Oregon, in *Garza* v. *Grayson* (1970) 255 Ore. 413 [467 P.2d 960], rejected the rule because it was "derived from a narrow and highly technical interpretation of the meaning of the terms 'reservation' and 'exception' when employed in a deed" (*id.*, at p. 961), and did not sufficiently justify frustrating the grantor's intention. Since the rule may frustrate the grantor's intention in some cases even though it is riddled with exceptions, we follow the lead of Kentucky and Oregon and abandon it entirely.

Willard contends that the old rule should nevertheless be applied in this case to invalidate the church's easement because grantees and title insurers have relied upon it. He has not, however, presented any evidence to support this contention,[7] and it is clear that the facts of this case do not

has the effect of emasculating the common law rule without expressly abandoning it. One court found that a reservation created a trust in favor of the stranger (*Burns* v. *Bastien* (1935) 174 Okla. 40 [50 P.2d 377]), but this approach seems unduly elaborate to achieve the grantor's intent. Finally, several courts, like the court in *Boyer, supra,* will disregard the rule entirely when the stranger is the grantor's spouse. (See *Saunders* v. *Saunders* (1940) 373 Ill. 302 [26 N.E.2d 126, 129 A.L.R. 306]; *Du Bois* v. *Judy* (1920) 291 Ill. 340 [126 N.E. 104]; *Derham* v. *Hovey* (1917) 195 Mich. 243 [161 N.W. 883, 21 A.L.R. 999]; *Glasgow* v. *Glasgow* (1952) 221 S.C. 322 [70 S.E.2d 432].) Thus, as in California, the rule has been riddled with exceptions in other states.

[6]*Mott* v. *Nardo* (1946) 73 Cal.App.2d 159 [166 P.2d 37], is the only appellate decision in California since 1860 to apply the rule. In that case, however, application of the rule did not defeat the grantor's intention. A bank owned the subject property and was joined in conveying it by one Avery, who was a trustee of the bank but who had no interest in the property. The deed reserved a right-of-way for construction of water conduits, and Avery quitclaimed his interest to a water company. Finding that the deed did not purport to convey an interest to Avery (*id.*, at p. 162), and that the bank was unaware Avery believed he had acquired some interest (*id.*, at p. 163), the court held that he had no interest because he was a stranger to the title. Since the bank apparently did not intend to vest an interest in Avery, the holding is not inconsistent with the general effort to effectuate the grantor's intention.

[7]Although there was testimony at the trial as to the chain of title by an employee of a title insurance company, there was no evidence that a policy of title insurance was actually issued, or what its terms were.

demonstrate reliance on the old rule. There is no evidence that a policy of title insurance was issued, and therefore no showing of reliance by a title insurance company. Willard himself could not have relied upon the common law rule to assure him of an absolute fee because he did not even read the deed containing the reservation. This is not a case of an ancient deed where the reservation has not been asserted for many years. The church used lot 20 for parking throughout the period when Willard was purchasing the property and after he acquired title to it, and he may not claim that he was prejudiced by lack of use for an extended period of time.

The determination whether the old common law rule should be applied to grants made prior to our decision involves a balancing of equitable and policy considerations. We must balance the injustice which would result from refusing to give effect to the grantor's intent against the injustice, if any, which might result by failing to give effect to reliance on the old rule[8] and the policy against disturbing settled titles. The record before us does not disclose any reliance upon the old common law rule, and there is no problem of an ancient title. Although in other cases the balancing of the competing interests may warrant application of the common law rule to presently existing deeds, in the instant case the balance falls in favor of the grantor's intent, and the old common law rule may not be applied to defeat her intent.

Willard also contends that the church has received no interest in this case because the clause stated only that the grant was "subject to" the church's easement, and not that the easement was either excepted or reserved. In construing this provision, however, we must look to the clause as a whole which states that the easement "is given." Even if we assume that there is some ambiguity or conflict in the clause, the trial court found on substantial evidence that the parties to the deed intended to convey the easement to the church. (*Coast Bank* v. *Minderhout*, 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265]; see *Estate of Russell*, 69 Cal.2d 200, 206-214 [70 Cal.Rptr. 561, 444 P.2d 353].)

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[8]In weighing claims of reliance, the court must, of course, give consideration to the several exceptions to the common law rule developed by the courts and partial abrogation of the rule by section 1085 of the Civil Code.