NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2023-0436
Citation: LeFevre v. Hogan, 2024 N.H. 38

DAVID E. LEFEVRE & a.

v.

TIFFANY LEE HOGAN & a.

Argued: March 14, 2024
Opinion Issued: July 17, 2024

Tarbell & Brodich, P.A., of Concord (David E. LeFevre on the brief and orally), for the plaintiffs.

Orr & Reno P.A., of Concord (Lisa Snow Wade on the brief and orally), for the defendants.

HANTZ MARCONI, J.

[¶1] The plaintiffs, David and Amy LeFevre, appeal a decision of the Superior Court (Houran, J.) finding that a valid easement exists over their property for the benefit of property owned by the defendants, Tiffany and James Hogan. We affirm.

[¶2] The following facts are taken from the trial court's orders or are otherwise supported by the record. The LeFevres own residential property in Deering (the LeFevre Lot). The Hogans own abutting property (the Hogan Lot). In 1958, both properties were owned by The Board of Home Missions of the Congregations and Christian Churches (the Church). That year, the Church conveyed the LeFevre Lot to Howard Spragg. In 1985, Howard Spragg conveyed the LeFevre Lot to himself and his wife, Jane Spragg. In 1990, the Church conveyed 69.4 acres of land adjacent to the Lefevre Lot, including what would become the Hogan Lot, to Deborah Spragg, who then conveyed the 69.4 acres to Christopher Paul.

[¶3] In 2002, Jane Spragg conveyed the LeFevre Lot to Lynne McEwan by warranty deed (the Spragg-McEwan deed). The Spragg-McEwan deed contains the following language:

> [T]here is excepted and reserved from the premises herein conveyed a permanent easement or right of way for the benefit of property owned by Christopher Paul Spragg[1] . . . . Said right of way to be used for the purpose of access to and from said premises and Wolf Hill Road and for related utility purposes. Said easement and right of way consists of a strip of land 30 feet in width [running along the north border of the LeFevre Lot]. By this reservation, the Grantor specifically grants to said Christopher Paul Spragg, his successors and assigns, the right to use said reserved right of way . . . .

Later that year, Christopher Paul conveyed the 69.4 acres to Casa Land & Timber, LLC (Casa). That deed did not mention the easement reserved by the Spragg-McEwan deed. In 2003, Jane Spragg recorded a "Confirmatory Warranty Deed" that stated, in part:

> This deed is to confirm that I reserved and intended to convey a right of way to and for the benefit of the Christopher F. Paul property (now owned by Casa Land and Timber, LLC) and intended that the right of way be attached to the Christopher F. Paul property, said right of way . . . as described in deed from Jane N. Spragg, M.D. to Lynne McEwan, dated August 30, 2002 . . . .

[¶4] Casa then subdivided the 69.4 acres into nine lots. One note on the subdivision plan states that the "[p]arcel is benefited by a 30' wide access and

---

[1] Though the deed names Christopher Paul Spragg, there is no dispute that this refers to Christopher Paul, the defendants' predecessor in title.

utility easement from Wolf Hill Road," and references the registry of deeds' book and page numbers where the Spragg-McEwan deed and confirmatory deed are recorded. Of the nine lots, only the Hogan Lot is contiguous with the 30' wide easement shown on the plan. Casa conveyed the Hogan Lot to Reginald Houle in 2004, who later conveyed the lot to Matthew MlCuch. The deed to MlCuch states that the property "shall have the benefit of a 30 foot wide access and utility easement from Wolf Hill Road, Deering, NH, as shown on [the Casa subdivision plan]," and references the recording book and page numbers for the Spragg-McEwan deed and confirmatory deed.

[¶5] In 2007, McEwan conveyed the LeFevre Lot to David and Amy LeFevre. The deed includes the same easement language as the Spragg-McEwan deed. In 2021, MlCuch conveyed the Hogan Lot to Tiffany and James Hogan by a deed that describes the 30' right of way over the LeFevre Lot and references the Spragg-McEwan deed and confirmatory deed.

[¶6] This dispute arose when the Hogans began to utilize the easement for access to their property. The LeFevres filed this action seeking to quiet title over the portion of their property designated as the 30' wide easement, and for declaratory and injunctive relief. The defendants filed a counterclaim alleging that the easement was validly created by deed, or, alternatively, by necessity or prescription. The Superior Court (Nicolosi, J.) granted a preliminary injunction in favor of the LeFevres. Thereafter, the parties filed cross-motions for summary judgment. The Superior Court (Houran, J.) determined that the 2002 Spragg-McEwan deed created a valid easement over the LeFevre Lot and entered judgment in the defendants' favor. The trial court denied the LeFevres' motion for reconsideration and clarification, and this appeal followed.

II

[¶7] When reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. JMJ Properties, LLC v. Town of Auburn, 168 N.H. 127, 129 (2015). If our review of the evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. at 129-30. To the extent that the parties have agreed to a set of undisputed facts, we review, de novo, the trial court's application of the law to these facts. Id. at 130.

[¶8] The LeFevres argue that the Spragg-McEwan deed did not create a valid easement. Resolving this question requires us to interpret the Spragg-McEwan deed. The interpretation of a deed is a question of law, which we review de novo. Carter Country Club v. Carter Community Bldg. Ass'n, 174 N.H. 686, 691 (2021). When interpreting a deed, we give it the meaning

3

intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time.  Id.  If the deed's language is clear and unambiguous, we will interpret the intended meaning from the deed itself without resorting to extrinsic evidence.  Id.  If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be considered to clarify its terms.  Id.  The language of a deed is ambiguous if the parties could reasonably disagree as to its meaning.  Id.

[¶9] When interpreting the language of a deed, we consider the deed as a whole.  Id. at 692.  We adhere to the guiding principle that the intent of the parties should be effectuated whenever possible.  Id.  We also remain mindful that formalistic requirements in real estate conveyancing have largely given way to effectuating the manifest intent of the parties, absent contrary public policy or statute.  Id.

[¶10] Citing the "stranger to the deed" doctrine, the LeFevres assert that because Christopher Paul was not a party to the Spragg-McEwan deed, the deed could not validly convey an easement to him as a third party. Additionally, the LeFevres argue that the conveyance is invalid because there is no evidence that the Spragg-McEwan deed was delivered to or accepted by Christopher Paul.  In response, the Hogans argue that the court correctly determined that Jane Spragg intended to convey the easement.  They argue that this court should reject the stranger to the deed doctrine because it is contrary to the "fundamental rule of construction used in this State; that is, upholding the intentions of the parties."  They note that some states recognize an exception to the doctrine when the grantor's intent to reserve property for a stranger is clearly expressed.  Because we agree with the trial court that Jane Spragg clearly intended to convey an easement to Christopher Paul, we decline to apply the stranger to the deed doctrine and hold that the Spragg-McEwan deed validly conveyed an easement.

[¶11] The stranger to the deed doctrine has its roots in feudal systems of land transfer.  Willard v. First Church of Christ, Scientist, Pacifica, 498 P.2d 987, 989 (Cal. 1972).  The rule states "that one cannot 'reserve' an interest in property to a stranger to the [deed]."  Id.  "Strangers to the deed are those who are not parties to it."  Conway v. Miller, 232 P.3d 390, 397 (Mont. 2010). Recognition of a reserved interest in favor of a third party was disfavored by early common law courts "because they mistrusted and wished to limit conveyance by deed as a substitute for livery by seisin."  Willard, 498 P.2d at 989.  This "common law rule conflicts with the modern approach to construing deeds because it can frustrate the grantor's intent."  Id.  Several states have created exceptions to the rule, see, e.g., Conway, 232 P.3d at 397 (explaining that doctrine will not apply "where the intent of the grantor to reserve an interest in property to a stranger is clearly shown"); Glasgow v. Glasgow, 70 S.E.2d 432, 435-36 (S.C. 1952) (exception where the third party was grantor's

4

spouse), while others have eliminated it entirely, Willard, 498 P.2d at 989; Klein v. McCullough, 858 S.E.2d 909, 916 n.7 (W.V. 2021) (explaining that "at least ten jurisdictions have either abandoned, or refused to adopt, the 'stranger to the deed' doctrine," and collecting cases).  Notably, both the First and Third Restatements of Property reject the common law rule.  Restatement (First) of Property § 472, at 2966 (1944); Restatement (Third) of Property § 2.6, at 102 (2000).  The Third Restatement explains that common law restrictions on third-party reservations "were designed to serve purposes that are now obscure. They have little modern utility and trap the poorly represented.  They frustrate intent and, to the extent they retain any force, should be discarded." Restatement (Third) of Property § 2.6 cmt. b at 103.

[¶12] As the LeFevres concede, New Hampshire has not adopted the stranger to the deed rule.  We have, however, recognized, in dicta, that "there would be difficulty in implying the grant of an easement from [grantor] to strangers to that deed if no more than that deed were to be considered." Keyes v. Baird, 88 N.H. 449, 451 (1937).  In Keyes, a deed reserved a right of way for the benefit of a third party who owned adjoining property.  Id. at 450 (preface to opinion).  After considering evidence that the parties to the original conveyance were aware of the grantor's intent to convey an easement in favor of the third party, we determined that the grantee's "successors in title may not equitably claim freedom from the easement" that had been bargained for.  Id. at 452.  We held that the grantee's successors in title were estopped from disclaiming the easement.  Id.; see also Kellison v. McIsaac, 131 N.H. 675, 682 (1989) ("The doctrine of estoppel by recitals in instruments provides that a grantee is estopped to deny the validity of any outstanding interest to which his deed recites that the conveyance is subject." (quotation and alterations omitted)).  Courts in Tennessee and Maine have similarly held that a grantee, having agreed to a reservation to a third party within a deed, cannot later disclaim that reservation.  Dalton v. Eller, 284 S.W. 68, 71 (Tenn. 1926); Hodge v. Boothby, 48 Me. 68, 70 (1861).

[¶13] Keyes suggests that, in New Hampshire, even if adopted, the stranger to the deed doctrine may be overcome by evidence of intent and express recitals within the deed.  See Keyes, 88 N.H. at 451-52.  This is consistent with our interpretive principle that the "intent of the parties should be effectuated whenever possible."  Carter Country Club, 174 N.H. at 692. Furthermore, we are persuaded by the modern authorities that reject archaic deed requirements in favor of the parties' intent.  See Restatement (Third) of Property § 2.6, at 102-03.  Thus, we decline to adopt the stranger to the deed doctrine, and instead adhere to interpretive principles that effectuate the intent of the parties.

[¶14] Here, there is no dispute that Jane Spragg intended to convey an easement across the LeFevre Lot in favor of the Hogan Lot.  The Spragg-McEwan deed is clear: "By this reservation, the Grantor specifically grants to

5

said Christopher Paul Spragg, his successors and assigns, the right to use said reserved right of way." Any further doubt is resolved by Jane Spragg's confirmatory deed, which expressly stated that this was her intent. Given this clear intent, we conclude that the Spragg-McEwan deed validly reserved and conveyed an easement over the LeFevre Lot for the benefit of the Hogan Lot.

[¶15] The LeFevres argue that applying the stranger to the deed rule to invalidate this conveyance is crucial to the "integrity and reliability of the State's land records." They emphasize that the system of recording land transfers by indexing grantors and grantees would not reveal the easement conveyed to Christopher Paul and thus would not ensure notice of the easement to the public. The LeFevres, however, as the parties most impacted by the easement, had notice of it because the easement language is set forth explicitly in their deed. Cf. Kellison, 131 N.H. at 682 (grantee estopped from disclaiming burdens on title set forth in the deed).

[¶16] The LeFevres also argue that there is no evidence that the Spragg-McEwan deed was ever delivered to or accepted by Christopher Paul. According to the LeFevres, the executed deed validly conveys title to a stranger to the deed only when it is "delivered" by the grantor with present intent to convey and is "accepted" by the third party. Arwe v. White, 117 N.H. 1025, 1028 (1977). Anything clearly manifesting the grantor's intent that the deed become operative, by words, acts and the surrounding circumstances, is sufficient to support a finding of legal delivery. Id. at 1028-29. If actual manual delivery is not established, delivery may be inferred from all the surrounding circumstances such as signing, attestation, acknowledgment and recording, but this evidence is prima facie only and not conclusive. Newbury v. Parsons, 103 N.H. 96, 98 (1960). Acceptance, however, may be presumed if a deed is beneficial to the third party. Amazeen v. Newcastle, 76 N.H. 250, 253 (1911).

[¶17] Although the determination of whether an executed deed has been properly delivered and accepted is ordinarily a question of fact, on occasion, it becomes a mixed question of fact and law. Arwe, 117 N.H. at 1029. Whether the facts, once ascertained, constituted delivery or acceptance is always a question of law. Id. Here, the Spragg-McEwan deed was signed, acknowledged, and recorded — prima facie evidence of delivery. Newbury, 103 N.H. at 98. Additionally, Jane Spragg's confirmatory deed states that she "intended to convey a right of way to and for the benefit of the [Hogan Lot]," which is clear evidence that she intended to effect the conveyance. See Arwe, 117 N.H. at 1028-29. In contrast, the LeFevres point to no evidence that Jane Spragg did not intend the deed to become operative. We therefore agree with the trial court that there was delivery here. And because the right of way contained in the Spragg-McEwan deed was beneficial to Paul, we agree with the trial court that the deed was accepted. See Amazeen, 76 N.H. at 252.

6

[¶18] We affirm the decision of the trial court concluding that the Spragg-McEwan deed created a valid easement over the LeFevre Lot for the benefit of the Hogan Lot.

Affirmed.

DONOVAN and COUNTWAY, JJ., concurred.